# CHARLOTTE, COLUMBIA AND AUGUSTA RAILROAD COMPANY v. GIBBES.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 41. Argued October 20, 1891. — Decided January 4, 1892.

The provisions in c. 40 of the General Statutes of South Carolina of 1882, requiring the salaries and expenses of the state railroad commission to be borne by the several corporations owning or operating railroads within the State, are not in conflict with the provision in the Fourteenth Amendment to the Constitution that a State shall not "deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is again decided that private corporations are persons within the meaning of that Amendment.

Requiring the burden of a public service by a corporation, in consequence of its existence and of the exercise of privileges obtained at its request, to be borne by it, is neither denying to it the equal protection of the laws, nor making any unjust discrimination against it.

The legislative and constitutional provision of the State of South Carolina that taxation of property shall be equal and uniform and in proportion to its value, is not violated by exacting a contribution according to their gross income of the several railroads, in proportion to the number of miles of railroad operated within the State, in order to meet the special service required of the state railroad commission.

THE court stated the case as follows:

The plaintiff below, and in error, The Charlotte, Columbia and Augusta Railroad Company, is a corporation existing under the laws of the States of North Carolina, South Carolina and Georgia. Its road and other property are situated in the county of Richmond, Georgia, and in the counties of Aiken, Edgefield, Lexington, Richland, Fairfield, Chester and York, South Carolina, and in the county of Mecklenberg, North Carolina.

By the legislature of South Carolina a general railroad law was passed in 1878, prescribing numerous provisions for the regulation and government of railroads in that State. That law, as amended in some particulars, was incorporated as

chapter 40 in the General Statutes of the State, in 1882.   It provides for the appointment by the governor of three railroad commissioners, charged to see to the enforcement of its various provisions, each of whom is to receive a salary of two thousand dollars a year, to be paid out of the treasury of the State in the manner provided by law for the salaries of other state officers; and also that, "the entire expenses of the railroad commission, including all salaries and expenses of every kind, shall be borne by the several corporations owning or operating railroads within this State according to their gross income proportioned to the number of miles in the State, to be proportioned by the comptroller general of the State, who on or before the first day of October in each and every year shall assess upon each and every corporation its just proportion of such expenses in proportion to its said gross income for the current year ending on the 30th day of June next preceding that on which the said assessment is made; and the said assessment shall be charged up against the said corporations, respectively, under the order and direction of the comptroller general, and shall be collected by the several county treasurers in the manner provided by law for the collection of taxes from such corporations, and shall be paid by the said county treasurers, as collected, into the treasury of the State in like manner as other taxes collected by them for the State."

For the fiscal year of 1883 the plaintiff was charged on the books of the county treasurer of Richland County, in South Carolina, with the sum of $987.75, being the amount assessed as a tax against that company as its entire proportion of the salaries and expenses of the railroad commissioners of the State, and being its proportion for all the counties.

The plaintiff, deeming the same to be unjust and illegal, paid the same under protest, and instituted the present suit, under a law of the State, to obtain a judicial determination that it was wrongfully and illegally collected, and the certificate of the court that it should be refunded.

In its complaint it alleges that the tax is illegal because assessed in proportion to the gross income of the plaintiff instead of being in proportion to the value of its property;

and because its imposition is in conflict with the constitution of the State in several particulars mentioned; and also in violation of the Fourteenth Amendment of the Constitution of the United States, by which each State is forbidden to deprive any person of property without due process of law, or to deny to any person within its jurisdiction the equal protection of the laws, in this, that the act and amendments authorizing it require railroad companies of the State, exclusively, to pay the salaries and expenses of three state officers, no other persons in the State being required to contribute any portion of the same, and require them to pay a tax of a nature, character and amount not required of other corporations and persons within the jurisdiction of the State.

The attorney general of the State appeared for the treasurer of Richland County, and admitted that that officer, under the order and direction of the comptroller general of the State, had collected of the plaintiff the sum claimed, $987.75, as the just proportion of the entire expenses of the railroad commissioners of the State, assessed upon that corporation by him, and also the sum of $24.70, being the amount of costs and penalties charged against it by his direction, and that the same were paid under protest, denying, however, that the laws under which the amount was assessed against the plaintiff and collected were unconstitutional and void, or that the same was illegally and wrongfully collected.

The constitution of South Carolina declares that "all property subject to taxation shall be taxed in proportion to its value," and that its legislature "shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property," with certain specified exceptions not affecting the questions presented.

The case was heard by the Court of Common Pleas for Richland County, and, by its decree, the validity of the assessment and tax was sustained and the complaint dismissed. On appeal to the Supreme Court of the State the judgment was affirmed, and, to review that judgment, the case is brought here on writ of error.

*Mr. Linden Kent* for plaintiff in error.

I. Corporations are persons within the meaning of the Fourteenth Amendment of the Constitution of the United States, and can invoke the benefits of the provisions of the Constitution and laws which guarantee to persons the enjoyment of property, or afford to them the means for its protection or prohibit legislation injuriously affecting it. *Santa Clara County* v. *Southern Pacific Railroad*, 118 U. S. 394; *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26.   I give prominence to this point because it is at once a full answer to the argument of the Chief Justice of the Supreme Court of South Carolina delivering the opinion in this case.

II. A tax which is in effect or substance a property tax imposed exclusively upon railroad companies in a State, in addition to the general tax upon all of their property ascertained by the Board of Equalization, which it bears alike with all other taxable property in the State, for the specific purpose of contributing to the support of certain state officers, whose functions may be connected with the railroads, is a double tax, and in contravention of the first section of the Fourteenth Amendment of the United States Constitution, that no State shall deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. *Kentucky Railroad Tax Cases*, 115 U. S. 321; *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Barbier* v. *Connolly*, 113 U. S. 27; *Memphis Gas Light Co.* v. *Shelby County*, 109 U. S. 398.

III. The additional tax imposed upon the railroads of South Carolina for the support of the Railroad Commission of that State was not in the exercise of its police power, but was in the exercise of its power of taxation, pure and simple, and being such, it must conform to principles of equality and uniformity.   I concede that, however arbitrarily a police power may be exercised, the Constitution would not be violated.   As to what is a police power, see *Barbier* v. *Connolly*, 113 U. S. 27; *License Cases*, 5 How. 504; *License Tax Cases*, 5 Wall. 562; *Munn* v. *Illinois*, 94 U. S. 113.   This case is not the

exercise of such a power. The charge upon a railroad company, in the form of a tax, of a sum sufficient to pay the costs and expenses of the enforced control and regulation over its properties and operations, which sum is paid into the treasury of the State and out in the same manner as other public moneys, is an exercise of the power of taxation pure and simple, and not of the police power.

*Mr. William E. Earle* for defendant in error. *Mr. Y. J. Pope,* Attorney General of the State of South Carolina, and *Mr. N. L. Jeffries* were with him on his brief.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

Notwithstanding the several objections taken in the complaint to the assessment and tax upon the railroad companies to meet the expenses and salaries of the railroad commissioners, the argument of counsel on the hearing was confined to the supposed conflict of the laws authorizing the tax with the inhibition of the Fourteenth Amendment of the Constitution of the United States. All other objections were deemed to be disposed of by the decision of the Supreme Court of the State, that the laws complained of are not in conflict with its constitution.

The property of railroad companies in South Carolina is subjected by the general law to the same tax as similar property of individuals, in proportion to its value, and like conditions of uniformity and equality in its assessment are imposed. The further tax laid upon them to meet the expenses and salaries of the railroad commissioners is not in proportion to the value of their property, but according to their gross income, proportioned to the number of miles of their roads in the State. This tax is stated to be beyond any which is levied upon other corporations to meet an expenditure for state officers, and, therefore, it is contended, constitutes an unlawful discrimination against railroad corporations, imposing an unequal burden upon them, in conflict with the constitutional

amendment which ordains that no State shall deny to any person the equal protection of the laws.   Private corporations are persons within the meaning of the amendment; it has been so held in several cases by this court. *Santa Clara County* v. *Southern Pacific Railroad Co.*, 118 U. S. 394; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 189; *Minneapolis & St. Louis Railroad Co.* v. *Beckwith*, 129 U. S. 26.

If the tax were levied to pay for services in no way connected with the railroads, as, for instance, to pay the salary of the executive or judicial officers of the State, whilst railroad corporations were at the same time subjected to taxation upon their property equally with other corporations for such expenses, and other corporations were not taxed for the salaries mentioned, there would be just ground of complaint of unlawful discrimination against the railroad corporations, and of their not receiving the equal protection of the laws.   But there is nothing of this nature in the tax in question.   The railroad commissioners are charged with a variety of duties in connection with railroads, the performance of which is of great importance in the regulation of those instruments of transportation.   They are invested with the general supervision of all railroads in the State, and are obliged to examine the same and keep themselves informed as to their condition, and the manner in which they are operated with reference to the security and comfort of the public, and compliance with the provisions of their charters, and the laws of the State. Whenever it appears to them that a railroad corporation has violated any law, or neglected in any respect or particular to comply with the terms of its charter, especially in regard to connections with other railroads, the rates of toll and the time schedules, they are obliged to give notice thereof to such corporation; and, if the violation or neglect is continued after such notice, to apply to the courts for an injunction to restrain the company complained of from further continuing to violate the law or the terms of its charter.   And, whenever it appears that repairs are necessary to any such road, or that any addition to the rolling-stock, or any enlargement or improvement

in the stations or station-houses, or any modification of the rates of fare for transporting freight or passengers, or any change in the mode of operating the road and conducting its business is reasonable and expedient, in order to promote the security, convenience and comfort of the public, they are required to give information to the corporation of the improvements and changes adjudged to be proper, and, if the company fail, within sixty days, to adopt the suggestions made, to take such legal proceedings as may be deemed expedient to compel them. It is their duty to listen to complaints against a railroad company made by the authorities of any city, town or county, and to give its officers due opportunity of explanation, and, if the complaint is sustained, to require the corporation to remove the cause of complaint. They are required to investigate the cause of any accident on the railroad resulting in the loss of life, and of any accident not so resulting, which shall require investigation, and to make annual reports to the legislature of their official acts, including such statements and explanations as will disclose the actual working of the system of railroad transportation in its bearing upon the business and prosperity of the State, with such suggestions as to the general railroad policy of the State, or as to any part thereof, or as to the condition, affairs or conduct of any of the railroad corporations, as may seem to them appropriate, with a special report of all accidents, and the causes thereof, for the preceding year. All contracts, agreements or arrangements of any and every nature, made by any railroad company, doing business in the State, for the pooling of earnings of any kind with any other railroad company or companies, are to be submitted to the commissioners for their inspection and approval, so far as they may be affected by any of the provisions of the act for securing to all persons just, equal and reasonable facilities for transportation of freight and passengers; and if the contracts, agreements or arrangements shall, in the opinion of the commissioners, in any way be in violation of the provisions of the act, the commissioners are to notify the railroad companies, in writing, of their objections thereto, specifying them, and if the railroad companies, after such notice, fail or neglect

to amend and alter such contract, agreement or arrangement in a manner satisfactory to the commissioners, they shall call upon the attorney general to institute such legal proceedings as may be necessary to enforce the penalties prescribed for such violations.

It is evident, from these and many other provisions that might be stated, that the duties of the railroad commissioners, when properly discharged, must be in the highest degree beneficial to the public, securing faithful service on the part of the railroad companies, and safety, convenience and comfort in the operation of their roads. That the State has the power to prescribe the regulations mentioned there can be no question. Though railroad corporations are private corporations as distinguished from those created for municipal and governmental purposes, their uses are public. They are formed for the convenience of the public in the transportation of persons and merchandise, and are invested for that purpose with special privileges. They are allowed to exercise the State's right of eminent domain that they may appropriate for their uses the necessary property of others upon paying just compensation therefor, a right which can only be exercised for public purposes. And they assume, by the acceptance of their charters, the obligations to transport all persons and merchandise upon like conditions and at reasonable rates ; and they are authorized to charge reasonable compensation for the services they thus perform. Being the recipients of special privileges from the State, to be exercised in the interest of the public, and assuming the obligations thus mentioned, their business is deemed affected with a public use, and to the extent of that use is subject to legislative regulation. *Georgia Railroad & Banking Co.* v. *Smith,* 128 U. S. 174, 179. That regulation may extend to all measures deemed essential not merely to secure the safety of passengers and freight, but to promote the convenience of the public in the transaction of business with them, and to prevent abuses by extortionate charges and unjust discrimination. It may embrace a general supervision of the operation of their roads, which may be exercised by direct legislation commanding or forbidding, under severe penalties,

the doing or omission of particular acts, or it may be exercised through commissioners specially appointed for that purpose. The mode or manner of regulation is a matter of legislative discretion. When exercised through commissioners, their services are for the benefit of the railroad corporations as well as of the public. Both are served by the required supervision over the roads and means of transportation, and there would seem to be no sound reason why the compensation of the commissioners in such case should not be met by the corporations, the operation of whose roads and the exercise of whose franchises are supervised. In exacting this there is no encroachment upon the Fourteenth Amendment. Requiring that the burden of a service deemed essential to the public, in consequence of the existence of the corporations and the exercise of privileges obtained at their request, should be borne by the corporations in relation to whom the service is rendered, and to whom it is useful, is neither denying to the corporations the equal protection of the laws or making any unjust discrimination against them. All railroad corporations in the State are treated alike in this respect. The necessity of supervision extends to them all, and for that supervision the like proportional charge is made against all. There is no occasion for similar regulations for the government of other than railroad corporations, and therefore no charge is made against them for the expenses and salaries of the commissioners. The rule of equality is not invaded where all corporations of the same kind are subjected to like charges for similar services, though no charge at all is made against other corporations. There is no charge where there is no service rendered. The legislative and constitutional provision of the State, that taxation of property shall be equal and uniform and in proportion to its value, is not violated by exacting a contribution according to their gross income in proportion to the number of miles of railroad operated in the State to meet the special service required. *Barbier* v. *Connolly*, 113 U. S. 27; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512.

There are many instances where parties are compelled to perform certain acts and to bear certain expenses when the

public is interested in the acts which are performed as much as the parties themselves. Thus in opening, widening or improving streets the owners of adjoining property are often compelled to bear the expenses, or at least a portion of them, notwithstanding the work done is chiefly for the benefit of the public. So, also, in the draining of marsh lands, the public is directly interested in removing the causes of malaria, and yet the expense of such labor is usually thrown upon the owners of the property. Quarantine regulations are adopted for the protection of the public against the spread of disease, yet the requirement that the vessel examined shall pay for the examination is a part of all quarantine systems. *Morgan* v. *Louisiana,* 118 U. S. 455, 466. So, the expense of a compulsory examination of a railroad engineer, to ascertain whether he is free from color blindness, has been held to be properly chargeable against the railroad company. *Nashville, Chattanooga & St. Louis Railway* v. *Alabama,* 128 U. S. 96, 101. So, where work is done in a particular county for the benefit of the public, the cost is oftentimes cast upon the county itself instead of upon the whole State. Thus, in *County of Mobile* v. *Kimball,* 102 U. S. 691, it was held that a provision for th issuing of bonds by a county in Alabama could not be declared invalid, although it imposed upon one county the expense of an improvement in which the whole State was interested. In such instances, where the interests of the public and of individuals are blended in any work or service imposed by law, whether the cost shall be thrown entirely upon the individuals or upon the State or be apportioned between them, is matter of legislative direction.

We see no error in the ruling of the court below upon the Federal question presented, and the conclusion we have reached renders it unnecessary to consider how far the obligation of the corporation was affected by the alleged amendment made to its charter.

*Judgment affirmed.*

JUSTICES BRADLEY and GRAY did not sit in this case nor take part in its decision.