McCANDLESS v. RICHMOND, &c., RAILROAD COMPANY.[1]

1. POLICE POWERS—COMMUNICATED FIRES.—Police powers of a State construed, and an act of the legislature, making railroad corporations responsible to others for fires caused by sparks from its engines, without regard to negligence, held not to be an exercise of police powers.

2. RAILROADS—LEASE.—Where one railroad company leases the rights and

----

[1]The equality of privileges, immunities, and protection guaranteed by the Constitution of the United States is shown in an extensive note, exhaustively collating the authorities published with the case of Louisville Safety Vault & T. Co. *v.* Louisville & N. R. Co. (Ky.), 14 L. R. A., 579.

property of another railroad company, all corporate rights exercised by the lessee in the operation of the leased road are referable to the chartered rights of the lessor.

3. Ibid.—Corporations.—A corporation defined, its status indicated, and the relation of a railroad corporation to the people, and its amenability to legislative control, declared.

4. Ibid.—Act of 1841, § 41—Amendment.—An act of the legislature declared that it should be a part of every charter of a corporation thereafter incorporated, or whose charter should be renewed, amended, or modified, unless expressly excepted in such charter, renewal, amendment, or modification, that such charter should be at all times subject to amendment, alteration, or repeal by the legislative authority. A charter was granted to a railroad corporation with this provision of law expressly excepted. The charter was then amended without such exception, and afterwards this corporation was consolidated with another by legislative enactment, without mention of this provision of law. *Held*, that a statute, subsequently passed, making all railroad companies in this State responsible to others for fires caused by sparks from its engines, became, by amendment, a part of the charter of this corporation.

5. Ibid.—Communicated Fires—Constitution.—This provision of the State law, as to damages from communicated fires along the right of way of a railroad, does not abridge the privileges or immunities of this railroad corporation, nor deprive it of property without due process of law, nor deny to it the equal protection of the laws, within the meaning of the 14th amendment to the United States Constitution.

6. Ibid.—Ibid.—Ibid.—Nor is the obligation of any contract impaired by this enactment, nor (the lessee being the corporation of another State) is there any interference with the control of Congress over interstate commerce.

7. Ibid.—Ibid.—Ibid.—Nor is it in violation of those provisions of the State Constitution which prohibit discriminations and unequal restraints and disqualifications, the dispossession of property otherwise than by the law of the land, and the taking of private property without consent or compensation.

Mr. Chief Justice McIver, *dissented*, and Mr. Justice McGowan concurred in the result.

Before Kershaw, J., Chester, March, 1891.

This was an action by Mary McCandless against the Richmond and Danville Railroad Company, commenced February 3, 1891, to recover damages for wood, timber, &c., of plaintiff, burned in July, 1890, by a fire which originated in a spark from one of defendant's engines.

*Mr. J. S. Cothran,* for appellant.

*Mr. J. K. Henry,* contra.

December 17, 1892.   The opinion of the court was delivered by

Mr. Justice Pope.   This action was commenced in the Court of Common Pleas for the county of Chester, in this State, and came on for trial at the March Term, 1891, of said court, before his honor, Judge Kershaw, and a jury.   At the trial the plaintiff and defendant submitted to the court the following agreement in writing: "The defendant consents to a verdict herein in the sum of one hundred dollars in favor of the plaintiff, provided that the court should determine that section 1511 of the General Statutes is constitutional, it being admitted that the fire which destroyed plaintiff's property was communicated from defendant's locomotive.   That if the court holds that said section of the General Statutes is unconstitutional, then the verdict shall be for defendant."

Section 1511 of the General Statutes of this State is as follows: "Every railroad corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, or originating within the limits of the right of way of said road, in consequence of the act of any of its authorized agents or employees, except in any case where property shall have been placed on the right (of way) of such corporation unlawfully or without its consent; and it shall have an insurable interest in the property upon its route for which it may so be held responsible, and may procure insurance thereon in its own behalf."

The presiding judge then charged as follows: "The parties in this case, admitting the origin of the fire to be sparks from defendant's locomotive, and the amount of damages sustained by reason thereof to be $100, and that the same was communicated from the locomotive of the defendant without negligence, and the Supreme Court of this State having held, in the case of *Thompson* v. *R. R. Co.,* 24 S. C., 366, that in such case, under

section 1511 of the General Statutes, the defendant would be liable, irrespective of any negligence, have agreed that a verdict shall be rendered in favor of the plaintiff for $100, unless I shall hold that said section 1511 is unconstitutional, so far as it undertakes to make railroad corporations responsible in damages for property injured by fire communicated by its locomotive engines, without any negligence upon its part, and while in the prudent, careful, and proper operation of its road and franchises. I now charge you, gentlemen of the jury, that said section of the General Statutes is constitutional in every respect, and is not contrary in any manner to the Constitution of the State or of the United States, and is a proper exercise of the police power of the State by the legislature. Under the stipulation entered into by the parties hereto, I must, therefore, direct that you find a verdict in favor of the plaintiff in the sum of $100."

The jury rendered a verdict in favor of plaintiff for $100, and judgment having been duly entered thereon, the defendant now appeals to this court on the following grounds:

"The defendant, the Richmond and Danville Railroad Company, excepts to the charge and ruling of the presiding judge in the above stated case, that section 1511 of the General Statutes of the State of South Carolina is constitutional, wherein it undertakes to make railroad corporations responsible in damages for property injured by fire communicated by their locomotive engines, absolutely and irrespective of any question of negligence, whereas, he should have held that said section was unconstitutional, so far as it undertook to make railroad corporations responsible for damages, irrespective of the question whether its conduct was proper or whether it was neglectful of duty.

"1. Because said section contravenes the Constitution of the United States, in that: (a) It deprives railroad corporations of their property without due process of law, in violation of the 14th amendment. (b) It denies to railroad corporations within its jurisdiction the equal protection of the law, in violation of the 14th amendment. (c) It impairs the obligation of the charter contract of the defendant, in violation of section

10, art. I.   (*d*) It interferes with the power of Congress to regulate commerce among the several States, in violation of section 8, art. I.

"2.  Because said section contravenes the Constitution of the State of South Carolina, in that: (*a*) It subjects railroad corporations to restraints and disqualifications other than are laid upon other corporations and citizens of the State, in violation of section 12, art. I.   (*b*) It discriminates between railroad corporations and other corporations and citizens of the State, by imposing upon them conditions and obligations, and subjects them to burdens different from those imposed upon other corporations and citizens, in violation of the same section and article.   (*c*) It imposes a new obligation upon railroad corporations for the benefit of another class of citizens, when they are guilty of no neglect of duty, in violation of the same section and article.   (*d*) It dispossesses railroad corporations of their property, under rule of law to which other corporations and citizens are not subjected, in violation of the same section and article.   (*e*) It deprives railroad corporations of their property under a rule of law to which other corporations and citizens are not subjected, in violation of the same section and article.   (*f*) It takes the private property of railroad corporations and applies the same to a private use, without the consent of said corporation, or a just compensation being made therefor, in violation of section 23, of art. I."

We observe that the learned Circuit Judge has announced in his charge to the jury, that section 1511 of the General Statutes of this State was constitutional, because it was the exercise by the State of what is known in law as the police power of the State.   In venturing to dissent from this view, as expressed by one for whose judgment we have so much respect, and in whose accuracy we have always with so much pleasure confided, candor, in the light of our own official responsibilities, requires that we should do so in this instance, no matter how distasteful it may be to us personally.   We are aware that many eminent lawyers and judges have adopted the views of the Circuit Judge.   But a careful consideration of the latest official declarations of this law by

the Supreme Court of the United States, have led us to modify our conceptions of what is involved in what is called the police power of a State, in this union of States. The fundamental idea, in ascribing such potency to this principle of the law, is based upon the immutable principles of self-defence, a doctrine ever dear to the freeman in his individual status, and very precious to the affections of a people united in society, in an organized government; that, inasmuch as all rights of the State, not delegated expressly or by necessary implication to the General Government, were reserved to the States in their individual sovereignty, and that as all provisions in the laws of the United States were made upon the theory that this re-served right in the sovereign States was preserved intact, when any such laws of the United States contravened this principle, such principle would be preserved. To make our meaning clear, take this illustration: the Constitution of the United States requires that no State shall pass any law impairing the obligation of a contract. Where a contract had been made by the State of Louisiana, whereby she invested a corporation, formed under her laws, with the exclusive privilege of having slaughter houses in the city of New Orleans, within that State, and yet a subsequent legislature of that State made another contract with another corporation, that directly impinged upon the first contract, and the question was finally carried to the Supreme Court of the United States, that august tribunal decided that the second contract was valid, although it was in violation of the obligation of the first contract, and justified such legislature upon the principle of law known as the police power, which required the protection of the public health of the citizens of that State.

As we before remarked, in view of this and some previous decisions of that court, many lawyers and judges conceived that all questions relating to the exercise of the sovereign powers of a State by that State fell within this principle of the law. A moment's reflection will satisfy any one that such a broad doctrine would have in its wake untold evils. Three cases finally reached the Supreme Court, involving this principle. They are all to be found in the 115th volume of U. S.

Reports, and are *The Louisville Gas Company* v. *Citizens Gas Company*, p. 685; *The New Orleans Gas Company* v. *Louisiana Light Company*, p. 650; and *The New Orleans Water Works Company* v. *Rivers*, p. 674. Mr. Justice Harlan delivered most carefully considered decisions in the three cases, wherein he reviewed every decision of that court relating to the police power of the States, and announced the conclusion, that there was a harmony in all of them, one with the other, and that such law only comprised questions pertaining to the public health, the public morals, and the public safety, and that the police power was confined within the limits of these three questions. It must be admitted on all hands, that the official declarations by a majority of this Supreme Court is a final, conclusive, and authoritative declaration of the true construction to be placed upon the Constitution and laws of the United States. Such being the result, we, therefore, cannot agree with the learned Circuit Judge here, in sustaining the constitutionality of this act of our legislature, on the ground that it is an exercise of the police power of the State.

But it by no means follows, that, being unable to agree to the reason assigned by the Circuit Judge in support of his charge to the jury, wherein he sustained this provision of the law as constitutional, we must reverse his judgment, for if there are any sound grounds in law for its support, we must do so. The assertion by him of the police power in the State was only a reason for his conclusion. It remains for us to consider the constitutionality of this part of the act of our legislature in other aspects. Does that section operate to defeat any of the provisions of the Constitution of the United States, or of this State, in any of the particulars complained? We propose to discuss these matters not exactly in the line suggested by the grounds of appeal, but our discussion will ultimate in a consideration of the merits of each one.

1. It may be as well to remark in the outset that the appellant here, in its separate individuality, is not a corporation created under the laws of this commonwealth. It is a creature of the laws of Virginia; but it has leased the Charlotte, Columbia and Augusta Railroad, and this

railroad is a creature of the State of South Carolina.    11 Stat., 415; *Ibid.*, 526; 14 Stat., 232.    Any corporate rights exercised by the appellant in its management of the franchises of the Charlotte, Columbia and Augusta Railroad Company, as its lessee, are referable solely to the charter rights of its lessor.

No clearer definition of a corporation exists than that announced by Chief Justice Marshall, in the case of *Dartmouth College* v. *Woodward*, 4 Wheat., 518: "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law.    Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence."    One of the rights conceded in this country to corporations, is that of being regarded as a person in the eyes of the law.    *Charlotte, &c., R. R. Co.* v. *Gibbes*, 142 U. S., 386, and authorities therein cited in support of such proposition.

The effect of the adjudicated cases on the subject of the charters conferred upon corporations operating railroads is, that railroad corporations are private corporations affected by a use in the public.    They are formed for the benefit and convenience of the public, hence by law invested with special privileges.    As public purposes are by them subserved, they are invested, to an extent limited to their needs, with the State's right of eminent domain.    Their business being affected with a public use, to that extent is subject to legislative action. *C., C. & A. R. R. Co.* v. *Gibbes, supra; Georgia, &c., Banking Company* v. *Smith*, 128 U. S., 174.

As the charter of a corporation sets into existence the properties which it possesses, it may not be amiss at this point to examine the charter which the laws of this State have conferred upon, and which has been accepted by, the Charlotte, Columbia and Augusta Railroad Company. So far as the grant of the usual rights possessed by a railroad company, the charter in this instance is complete.    We mean by this statement, that from the initial points of Augusta, Georgia, by way of Columbia, in this State, to the city of Charlotte, in North Carolina, this corporation has had conferred

upon it the usual properties possessed by railroads, but it may be proper to state that, in the act of the legislature of this State providing for its creation, any remuneration, secured by its terms, to the owners of the lands through which the right of way was to be obtained, only looked for compensation by such railroad to such land owners for the value of the property so taken by the railroad, such value being liable to be reduced by the consideration of the increased value lent to such lands by the railroad being built.   In no case was there any provision for the injury that might accrue to such property by reason of fire being used by its locomotives.   This railroad company was made up by the consolidation of the Charlotte and South Carolina Railroad Company with that of the Columbia and Augusta Railroad.   The first had been chartered in 1846–48, the second some time during the year 1858; the consolidation occurred in 1869, under an act of the legislature of this State.

The State of South Carolina, in 1841, made the following enactment: "Sec. 41. Be it further enacted, That it shall become part of the charter of every corporation, which shall, at the present or any succeeding session of the General Assembly, receive a grant of a charter, or any renewal, amendment, or modification thereof (unless the act granting such charter, renewal, amendment, or modification shall in express terms except it), that every charter of incorporation granted, renewed, or modified as aforesaid, shall at all times remain subject to amendment, alteration, or repeal by the legislative authority." 11 Stat., 183.   The act of 1846, providing a charter for the Charlotte and South Carolina R. R. Company, contained a clause especially excepting this corporation from such 41st section of the act of 1841.   The act passed in 1848 made no reference to such section.   The act providing for the consolidation as aforesaid *was silent* as to this 41st section of the act of 1841.

The effect of this section 41 of the act of 1841 has been construed by the court of last resort on constitutional questions—in the United States Supreme Court it has been made at least twice: *Tomlinson* v. *Branch*, 15 Wall., 460, and *Hoge* v. *Railroad Company*, 99 U. S., 348—in which last cited suit, Mr. Justice Field, as the organ of the court, said: "By the law of 1841,

every charter of a corporation in South Carolina, subsequently granted, amended, or modified, was subject to repeal, amendment, or modification by the legislature, unless specially excepted from such legislative control in the act granting the charter, amendment, or modification. Such is evidently the meaning of the 41st section of that law, though the intention is inaptly expressed. This construction is somewhat different from that placed upon it in *Tomlinson* v. *Jessup,* in 15 Wallace, and gives the legislature a more extended control. But it is the construction to which a more careful examination of the language has led us. By it the legislature said, that subsequent charters should be subject to repeal or amendment, unless they were in express terms excepted from its control in the acts granting them; and that existing charters, if subsequently amended or modified, should stand in the same position. Its provisions constituted the condition upon which every charter was afterwards granted, amended, or modified. They formed as much a part of the new or amended charter as if they had been originally embraced in it." Also, *Tomlinson* v. *Jessup,* 15 Wall., 454, in which the construction in *Hoge* v. *R. R. Company,* as to the effect of section 41, was virtually given in these words: "The power reserved to the State by the law of 1841 authorized any change in the contract, as it originally existed, or as subsequently modified, or its entire revocation."

It is admitted, that a charter granted by a State to a corporation makes a contract between the State and the corporation, and that a question as to impairment of that contract arises whenever a State, by subsequent legislation, seeks to alter the same against the will of the corporation, and that when such action of the State is questioned in law, the answer will have to be made, justifying such legislative interference with its contract by the State. It is contended here, that the legislature of this State has no right by the enactment of section 1511 to interfere with her contract with the Charlotte, Columbia and Augusta Railroad Company. But does it not seem that this State makes perfect answer to the appellant here, when it shows that the party who accepted the contract contained in the act of incorporation, did so with a positive stipulation on the part

of the State, that if the railroad company ever accepted any alteration or modification of its original charter by an act of the legislature of this State, that thereafter it would be competent for the legislature to alter, modify, or repeal such contract, at the pleasure of the State. Such is the inevitable effect, unless there should be placed upon the act in question some restraining hand, by the 14th amendment of the Federal Constitution.

It is well settled law, that the laws which subsist at the time and place of the making of a contract, and when it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. *White* v. *Hart*, 13 Wall., 653; *Van Hoffman* v. *City of Quincy*, 4 *Id.*, 535; *Edwards* v. *Kearzey*, 96 U. S., 601. So, when the State of South Carolina made a contract by the grant to this railroad company, all of her laws in existence at that time pertaining thereto became a part of such contract. At the date of this contract, under the law as it then existed, in case injury resulted to the property of another by fire, communicated from the locomotive in use by the appellant, no damages could be recovered therefor, unless negligence—want of due care—by the railroad company was shown. *Thompson* v. *R. R. Company*, 24 S. C., 366; *Rodemacher* v. *The Milwaukie & St. Paul Railway Company*, 20 Am. Rep., 600. Now the section 1511 of the General Statutes intervenes and changes that law, by extracting the matter of negligence, and requiring the railroad company to answer for the damages resulting from fire arising from its locomotives, when it destroys the property of others. It adds, however, a provision allowing the railroad company to insure the property on its route against such loss resulting from fire communicated by its engines, or occurring on its right of way. Let it be remembered, that such a privilege to the railroads could not be secured when losses occurred from negligence.

The inquiry must now be made, as previously suggested, does this section contravene the 14th amendment of the Federal Constitution? In the case of *Minor* v. *Happersett*, 21 Wall., 171, where the effect of the 14th amendment

8—38

was under consideration, Chief Justice Waite, in announcing that court's decision, stated: "The amendment did not add to the privileges and immunities of a citizen. It simply furnished an additional guaranty for the protection of such as he already had." The language of the first section of this amendment, in part, is as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Where can it be pretended that in this section 1511, the State of South Carolina has attempted to abridge the privileges or immunities of citizens of the United States? Is there not provided in the section an absolute equality of all railroad companies? Was not the Charlotte, Columbia and Augusta Railroad Company one of its own creatures, deriving its life from her laws? Care should be taken to restrict the view of this appeal to the fact, that it is really *this* railroad and *no other* that makes this question. We are not required to answer questions fanciful in their nature. Our duty is to confine ourselves and our judgment to the parties actually before this court. We repeat it, this appellant has no other rights in this connection than those possessed by its lessor. And we fail to see how this section under discussion has abridged the privileges or immunities of such lessor through his lessee. The right to alter the contract existed before 1869; it existed in 1882, when this section was enacted. The right to control in determining the propriety of its alteration by the assent of the lessor was in the State; all that has been done has been to exercise that admitted right. The same course has been adopted by other States, and the courts of last resort in those States have been upheld in such legislation. *Rodemacher* v. *The Milwaukie & St. Paul Railway Company,* 20 Am. Rep., 592; *Lyman* v. *The Boston & Worcester Railway Corporation,* 4 Cush., 288.

After all, what is the controlling motive in this legislation? It certainly is not animosity against railroads. Look at the facts underlying the exercise of this principle of law. The

constitution and laws of every well regulated community secure the enjoyment by every one of life, liberty, and property. A man owns property through which or near by the place where a railroad is constructed; the property of the man is destroyed by the fire communicated to the same by the railroad company. One man has lost his property through no carelessness of his own, and the railroad has destroyed that property through agencies necessary to the conduct of its business; the property of the citizen destroyed was not in the way of the proper conduct of the railway's business, but the fire set to it by the railroad company was while such property was off of its road-bed. Now, under all these circumstances, who shall suffer? In *Danner* v. *R. R. Company*, 4 Rich., 329, which was a case for negligence, and, of course, differs in that particular from the case at bar, the court ruled the law in this State to be, that upon the proof by the plaintiff of the killing of his cattle by the railroad company, it was then incumbent on the railroad company to rebut by its proof the charge of negligence. This section goes only a step further, by holding the railroad company responsible for injuries to the rights of others, resulting from agencies set in motion by it, and which had escaped from the railroad's control, so as to work an injury to the property of another, while such property was on its owner's premises.

The charge that this section takes the property of another without due process of law, cannot be successfully maintained. Here, there is no reference to the taking of the property of another. There is no compulsion used to this railroad, to allow the fire of its engine to escape and burn up the property of another, but the rather, it incites care to prevent that result, by providing a penalty for a failure to do so. Granted that the result is the payment of damages for the injuries aimed to be suppressed by this legislation, still it is only the result; no legislative provision vests the money of the railroad in the owner of property destroyed by the railroad. Nor do we see how it denies to this railroad the equal protection of the law.

Nor, from what has been already said herein, is there any ground to imply an impairment of the obligation of the con-

tract.   These matters are somewhat involved in the decision of the U. S. Court in the case of *C., C. & A. R. R. Co.* v. *Gibbes*, 142 U. S., 386, *supra*, and were all decided adversely to the railroad.   As to the last, where it is suggested that this section interferes with the power of Congress to regulate commerce among the States, in violation of section 8, of article I., we are utterly unable to perceive the slightest soundness in that position.   The argument of appellant is silent at this point.   We apprehend that it must be a vast circuit that must be traversed, to make this suggestion of error available to the correction of this judgment of the Circuit Court.

2. (*a*) A rule of law ought to apply generally, that is true; that is, there ought to be no excepted classes.   What is the crime of murder in one man, ought, under the law, to be the same crime in another man under the same circumstances.   When a tax is levied upon the profession of law, one gentleman at the bar should be required to pay it just as do all the other members of the profession.   One pilot should be allowed to collect the same fees as another pilot for similar services.   One railroad should be subjected to a fine, or other penalty, for failing to blow its whistle at a crossing, just as all other railroads should be required to do.   One railroad should be required to pay, on its gross earnings, a tax to pay the expenses of the railroad commissioners of this State, just as all the balance of the railroads in this State are required to do.   Equality is equity.   But when the law reaches out its strong arms and punishes the murderer, he should not complain that his other fellow-citizens, who have not committed murder, are not also hung.   The lawyer, who pays a tax on his profession, should not complain that a tanner does not pay a like tax.   A commission merchant should not feel chagrined because a pilot collects fees for bringing a vessel into port, and he cannot.   A railroad should not complain when it has to pay the expenses of the railroad commission, whose office it is to superintend its business, because a cotton factory, with whom the railroad commission has no business, is not required to pay its part of such expenses.   And so with the balance.   It is upon

those common carriers, who have confided to them valuable franchises by the State, on condition of a use by them of the public, and who operate railroads over a right of way contiguous to the property of others, with a flying locomotive, whose sparks sometimes spread ruin to others—it is to the railroads, who alone do this, that the law speaks, whether such railroads are operated and owned by one man, a partnership of men, or a chartered company. It speaks to every one alike. It is no respecter of persons. This exception is overruled. (*b*) What is said in disposing of the objections indicated as "(*a*)" will apply with equal force to the objection now presented.

(*c*) The laws of this State reserved the right to change the contract. The legislature, in its wisdom, has acted. In our judgment, its action is not liable to be considered an error, as alleged. (*d*) The short reference in "(*c*)" applies here as well.

(*e*) and (*f*) We are at a loss to perceive how this action of the State can be said to deprive or take the private property of railroads and give it another without the railroad's consent, and contrary to law, especially to the Constitution of this State. A little reflection, we are sure, will remove this difficulty. Where railroads are made to pay damages to persons whose persons or property they have injured, it cannot be said that such damages, though very unwillingly paid, are taken from them contrary to law. It is the law when enforced that requires the damages paid. The provision of the statute creating the offence, for the commission of which the damages are adjudged to be paid, can, in no sense, be made to apply to the case suggested in these exceptions.

The grounds of appeal must all be dismissed. It is the judgment of this court, that the judgment of the Circuit Court be affirmed.[1]

Mr. Justice McGowan. I am not inclined to declare an act of the legislature unconstitutional unless it is clearly so. I concur in the result.

Mr. Chief Justice McIver, *dissenting*. It being admitted

[1]See Blum *v*. Richland County, reported in this volume.

that the fire which destroyed plaintiff's property, sometime in July, 1890, had its origin in sparks escaping from defendant's locomotive, and that the damages sustained amounted to one hundred dollars, the only question in the court below, and the only question raised by this appeal, is, whether section 1511 of the General Statutes comes in conflict with the provisions of the Constitution of this State or that of the United States. The section in question reads as follows: "Every railroad corporation shall be responsible in damages to any person or corporation, whose buildings or other property may be injured by fire communicated by its locomotive engines, or originating within the limits of the right of way of said road, in consequence of the act of any of its authorized agents or employees, except in any case where property shall have been placed on the right of way of such corporation unlawfully, or without its consent; and shall have an insurable interest in the property upon its route for which it may be so held responsible, and may procure insurance thereon in its own behalf." This section has been construed by this court, in the case of *Thompson* v. *The R. & D. Railroad Company*, 24 S. C., 366, as designed to eliminate the element of negligence, whenever a railroad company is sued for damages occasioned by fire communicated by its locomotives or originating upon the right of way, in consequence of the act of any of the authorized agents or employees of such company. So that the practical inquiry here is whether the legislature has the power to pass an act making a railroad company liable for damages done to the property of another, without fault on its part, and while in the lawful use of its own property. This question not having been raised or considered in Thompson's case, *supra*, is now presented for the first time, and must now be determined.

The general rule, as I understand it, is that where one person, in the lawful use of his own property, happens to do some injury to the property of another, without fault on his part, he is not liable for the damages resulting from such injury. To make him so liable, it is necessary to show, not only the injury done, but also that it was due to some fault, either wilful or negligent, on the part of the person sought to be charged. This rule has

been applied to cases in which the damages sustained resulted from fire communicated by sparks from locomotive engines running on railways. Cooley on Torts, 589–592, where that eminent author says: "The gist of the action is negligence." See, also, *McCready* v. *Railroad Company*, 2 Strob., 356, where Wardlaw, J., lays down the same doctrine. In addition to this, it will be found that the legislature has incorporated this principle in its legislation upon the subject of the destruction of property by fire, for by section 2497 of the General Statutes, as amended by the act of 1886, 19 Stat., 621 (which was the law in force at the time of the destruction of the property of plaintiff by fire), it is expressly declared, that whoever shall maliciously or *negligently* set fire to any combustible matter, so as thereby the woods, &c., of another be set on fire, shall be liable to indictment, and shall, moreover, be liable to an action for damages; and in the subsequent amendment, by the act of 1891 (20 Stat., 1125), the same element of negligence is retained. It seems, therefore, that the legislature, by the provisions of section 1511 of the General Statutes, has undertaken to apply a much more stringent rule to railroad corporations than would be applied to all other persons under like circumstances.

Now, as it is properly conceded that corporations, in inquiries like the present, must be regarded as persons, it seems to me that the section in question is a violation of sec. 12, art. I., of the Constitution of this State, as well as of the 14th amendment to the Constitution of the United States. In other words, it is class legislation, which it was one of the objects of those constitutional provisions to prevent. It subjects a railroad corporation to "other restraints or disqualifications" in regard to its personal rights than such as are laid upon others under like circumstances, and it denies to railroad corporations "the equal protection of the laws;" and it tends to deprive a railroad corporation of its property without due process of law, and merely by legislative declaration. For, as we have seen, where fire is communicated to the lands of another by sparks escaping from a locomotive engine of a railroad corporation, while passing over its track lawfully, as it has a right to do under the provisions of its charter, this legislation undertakes

to make such corporation liable for any damage that may ensue, whether there is any negligence on the part of the corporation or not, while if the same damage is done by any other person to the property of another, he cannot be made liable without proof of some fault or negligence upon the part of the person causing the damage. It is true, that class legislation may sometimes be vindicated as an exercise of the police power; but I agree with Mr. Justice Pope, that the legislation here under consideration cannot be vindicated as an exercise of the police power; and I need not undertake to add anything to what he has said, in his opinion, upon this subject.

It must be remembered that the question here is not as to the power of the legislature to enact laws for the proper regulation of railroad corporations in the exercise of the franchises granted to them, which would be readily conceded. The chapter of the General Statutes, in which the section under consideration is found, affords numerous instances of the exercise of such a power, which never have, and never can be, successfully questioned. But the question here is as to the power of the legislature to enact a law by which the liability of a railroad corporation for an injury done to the property of another, without fault on its part, while in the lawful use of its own property, shall be measured by a different rule, and determined by a different principle from that which would be applied to every other person, who, while in the lawful use of his own property, should, without fault on his part, injure the property of another, whereby in the latter case it would be absolutely necessary to show negligence in order to fix liability, while in the former it would not be necessary to show any negligence whatever.

Nor is this a question whether the legislature may not enact a law altering the rules of evidence, by declaring that where the property of a person is injured by fire caused by sparks escaping from a locomotive engine, proof of the injury from such a cause shall constitute *prima facie* evidence of negligence, and throwing the burden of proof upon the railroad corporation using such locomotive of showing that there was no negligence; but, as I have said, the question, practically, is whether

one principle of law can be applied to railroad corporations and another to all other persons, under like circumstances.

. We have no case in this State directly in point; and it must be conceded that the authorities elsewhere are conflicting. It seems to me, however, that the cases which hold legislation, of the character of this now under consideration, as unconstitutional, are better founded in reason than those which hold the contrary. See *Zeigler* v. *S. & N. Ala. R. R. Company*, 58 Ala., 594; *County of San Mateo* v. *Southern Pacific R. R. Company*, 13 Fed. Rep., 722; *New Orleans, &c., R. R. Company* v. *Bourgeois*, 14 Am. St. Rep., 534 (66 Miss., 3); *Oregon, &c., Railway, &c., Company* v. *Smalley*, 22 Am. St. Rep., 143; *Chicago, &c., R. R. Company* v. *Minnesota*, 134 U. S., 418.

It seems to me, therefore, that section 1511 of the General Statutes is clearly unconstitutional, and should be so declared.

Judgment affirmed.