MATTHEWS v. BOARD OF CORPORATION COM'RS OF NORTH CAROLINA et al.

(Circuit Court, E. D. North Carolina. October 31, 1899.)

1. CORPORATIONS—SPECIAL PRIVILEGES GIVEN BY CHARTER—RIGHTS OF SUCCESSOR.

A provision of the special charter of a railroad corporation authorizing its directors to fix the rates for transportation of passengers and freight on its road, if construed as a contract which would prevent the state from regulating such rates, is in derogation of its sovereign powers, and to be strictly construed and limited to the immediate parties; and the immunity granted does not pass by a sale of the company's property on foreclosure to its successor, although by statute or by its charter the purchaser succeeds generally to "all the franchises, rights, privileges and immunities" of the mortgagor.

2. SAME—POWER OF LEGISLATURE TO ALTER CHARTER—CONSTITUTIONAL PROVISIONS.

Under the North Carolina constitution of 1868 (article 8, § 1), providing for the formation of corporations under general laws, and in certain cases by special act, and that "all general laws and special acts passed pursuant to this section may be altered from time to time or repealed," the charter of a railroad corporation, whether organized under a general law or by a special act passed pursuant to said section, is subject to alteration or repeal by the legislature, and such alteration or repeal does not impair the obligation of a contract.

3. RAILROADS—REPEAL OF CHARTER PROVISIONS—EFFECT OF ACT TO REGULATE RATES.

The North Carolina act of 1899 creating a state corporation commission, and giving it the right to regulate the rates of railroads, operates as an alteration and a repeal, pro tanto, of the charter of any railroad company of the state which vests such company with the exclusive right to fix its rates.

In Equity. This was a suit by Virginia B. Matthews against the board of corporation commissioners of North Carolina, the Carolina Central Railroad Company, and others, to restrain the enforcement of an order of the commissioners reducing rates.

J. A. Johnson, L. R. Watts, and MacRae & Day, for complainant. Shepherd & Busbee, Battle & Mordecai, and Simmons, Pou & Ward, for defendants.

SIMONTON, Circuit Judge. The complainant is the holder of bonds of the Carolina Central Railroad Company, secured by a mortgage of its property and franchises. She comes into court complaining of the board of corporation commissioners of the state of North Carolina, in that the said board have so far reduced the rates of freight on fertilizers that the income of the railroad company is seriously impaired, and its interest-earning capacity is destroyed. The bill makes two federal questions: (1) That by the charter of this railroad company the exclusive right of fixing charges on passengers and freight carried by said company is vested in its board of directors, and that this interference by the corporation commission is invalid, as the act authorizing it impairs the contract of the charter; (2) because the rate imposed by the corporation commission is so unreasonable that it amounts to the taking of private property for public purposes without compensation. These two grounds will be examined.

On February 15, 1855, the general assembly of North Carolina incorporated the Wilmington & Charlotte Railroad Company. On the next day, by a supplemental act, the name of the company was changed into the Wilmington, Charlotte & Rutherford Railroad Company. The seventeenth section of the charter of this company provided:

"Be it further enacted, that the said company shall have the exclusive right of conveyance or transportation of persons, goods, merchandise and produce on said railroad to be constructed, at such charges as may be fixed upon by the board of directors."

Under a decree for foreclosure of the superior court of Hanover county, entered at January term, 1873, the property and franchises of the Wilmington, Charlotte & Rutherford Railroad Company were sold at public auction, and conveyed to one Timothy H. Porter. The conveyance was of "all the railroad known as the Wilmington, Charlotte and Rutherford Railroad, and also, all and singular, the corporate franchises, rights, and privileges of said corporation." On February 20, 1873, a little over two months before this sale, the general assembly of North Carolina had incorporated the Carolina Central Railway Company. The fifteenth section of this charter authorizes the company to purchase the Wilmington, Charlotte & Rutherford Railroad at any sale thereof, "and all its contracts, franchises, rights, privileges and immunities." Under the authority of this act the said railroad was conveyed by Porter to the Carolina Central Railway, and, among other things, all the franchises, rights, and privileges belonging or in any way appertaining to said corporation (the Wilmington, Charlotte & Rutherford Railroad) and to said railroad. A mortgage on the Carolina Central Railway was foreclosed on March 15, 1880, and a sale had thereunder. On June 25, 1880, under said sale, a conveyance was made of all the property, rights, and franchises of the debtor company to the Carolina Central

97 F.—26

Railroad Company. This last-named corporation was organized under a general law of North Carolina regulating mortgages by corporations and sales thereunder, ratified March 1, 1873. All this was confirmed by an act of the general assembly of North Carolina, ratified January 18, 1881, entitled "An act to perfect the organization of the Carolina Central Railroad Company." This act declares this company a lawfully organized corporation, succeeding to, and legally possessed of, all the rights, powers, privileges, and franchises which were owned or possessed by the Carolina Central Railway Company prior to the sale.

In 1868 North Carolina adopted a constitution, and in article 8, § 1, provided as follows:

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the object of the corporation cannot be obtained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed."

The corporation commission was created by an act of the general assembly passed in 1899.

·The complainant contends that the Carolina Central Railway Company is the successor of the Wilmington, Charlotte & Rutherford Railroad Company, and entitled to all its rights, privileges, and immunities by charter; that by the charter contract with the state, as above quoted, the directors had the exclusive right to fix rates for passengers and freight; that the present company is entitled to set up this contract; and that any action of the state of North Carolina taking away this right to fix rates violates the obligation of a contract, and is void. Assuming that this is a contract between the state of North Carolina and the Wilmington, Charlotte & Rutherford Railroad Company, did it pass with the property, and inure to each purchaser? The right of a state to legislate regarding railroads, regulating their charges, is sustained as an exercise of the police power. But it must be exercised in subordination to the provisions of the constitution of the United States. Railway Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 567. "Usually," says the court in Chicago, B. & Q. R. Co. v. Nebraska, 170 U. S. 72, 18 Sup. Ct. 519: "Where a contract, not contrary to public policy, has been entered into between parties competent to contract, it is not within the power of either party to withdraw from its terms without the consent of the other, and the obligation of such a contract is constitutionally protected from hostile legislation. Where, however, the respective parties are not private persons dealing with matters and things in which the public has no concern, but are persons or corporations whose rights and powers were created for public purposes, by legislative acts, and where the subject-matter of the contract is one which affects the safety and welfare of the public, other principles apply. Contracts of the latter description are held to be within the supervising power and control of the legislature, when exercised to protect the public safety, health, and morals, and that clause of the federal constitution which protects contracts from legislative action cannot in every case be successfully invoked. The presumption is that, when such

contracts are entered into, it is with the knowledge that parties cannot, by making agreements on subjects involving the rights of the public, withdraw such subjects from the police power of the legislature." Following out this principle, the courts have been loath to extend an immunity granted to a corporation beyond itself. They treat this as a personal privilege, not transmissible to its successors in any way. In Picard v. Railroad Co., 130 U. S., at page 641, 9 Sup. Ct. 642, the court says:

"Yielding to the doctrine that immunity from taxation may be granted, that point being already adjudged, it must be considered as a personal privilege, not extending beyond the immediate grantee, unless otherwise so declared in express terms. * * * It will not pass merely by a conveyance of the property and franchises of a railroad company, although such company may hold its property exempt from taxation."

In Railway Co. v. Miller, 114 U. S. 176, 5 Sup. Ct. 813, it was decided that an immunity from taxation enjoyed by one railroad company did not pass to a purchaser under foreclosure, although the act provided that the purchaser should forthwith become a corporation, and should succeed to all such franchises, rights, and privileges as would have been had by the original company but for such sale and conveyance. The reasoning of this opinion has peculiar application to the case at bar. The language of the clause which contains the exemption is explicit. It is, "No taxation shall be imposed by the state until the profits of the company shall amount to ten per cent. on the capital of the company." But one company is spoken of, and that is the company to be incorporated under that act. The property to be exempt is the property of that company, and no other, and while it continues to be the property of that company, and no longer. In Road Co. v. Sandford, 164 U. S. 579, 17 Sup. Ct. 202, the court say:

"It is as vital that the state should retain its control of tolls upon public highways as it is that it should not surrender or fetter its power of taxation. The right to regulate the rate is a power of the same character, and, in the construction of language said to confer such, the same principle should be applied."

In Railroad Co. v. Pendleton, 156 U. S. 667, 15 Sup. Ct. 413, quoted and affirmed in Road Co. v. Sandford, 164 U. S. 587, 17 Sup. Ct. 201:

"In the absence of express statutory direction, or of an equivalent implication by necessary construction, provisions in restriction of the right of the state to tax the property or to regulate the affairs of its corporations do not pass to new corporations succeeding by consolidation, or by purchase under foreclosure, to the property and ordinary franchises of the first grantee. * * * This is a salutary rule of interpretation, founded on an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the grant, construed strictissimi juris."

Several cases are quoted which sustain the conclusion "that a special statutory exemption or privilege, such as immunity from taxation, or a right to fix and determine rates of fare, does not accompany the property in its transfer to a purchaser, in the absence of express direction to that effect in the statute." Railway Co. v. Gill, 156 U. S. 656, 15 Sup. Ct. 484; Railroad Co. v. Pendleton, 156 U. S. 673, 15 Sup. Ct. 413. See, also, Banking Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. 47. It would seem under these authorities, that this right in

the directors to fix rates did not pass, with the other property of the Wilmington, Charlotte & Rutherford Railroad Company, to the successive purchasers at judicial sales. See Railroad Commission Cases, 116 U. S. 324, 6 Sup. Ct. 334.

But, apart from this, as has been seen, the constitution of North Carolina provides:

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the object of the corporations cannot be obtained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed."

The corporation of the Carolina Central Railroad, defendant herein, owes its existence, and the possession and the right to the enjoyment of all its franchises, entirely to the act of assembly "to regulate mortgages by corporations and sales under the same,"—Code N. C. §§ 697, 698 (a general act),—and to the special act of January, 1881, to perfect the organization of the Central Railroad Company. And these two acts owe their validity entirely to the constitution of 1868. The general act provides that, upon conveyance to the purchasers at foreclosure sale, the said company whose mortgage is foreclosed shall ipso facto be dissolved, and said purchasers shall forthwith be a corporation by any name which may be set forth in the conveyance. This being so, the corporation thus organized was a new corporation, and it is controlled by the principle established in Shields v. Ohio, 95 U. S. 319, and Railroad Co. v. Maine, 96 U. S. 499; and its charter may be altered, amended, or repealed at the will of the legislature, under the constitutional provision.` If, then, it be admitted that this right to regulate rate charges was a part of the charter of this company, and is as if it were repeated in ipsissimis verbis, it was subject to the control of the general assembly, and could be altered or repealed at its pleasure. This being so, the act creating the corporation commission, and giving it the right to regulate the rates for railroads, is an alteration of, and a repeal pro tanto of, this charter. Railroad Co. v. Pendleton, supra; Hoge v. Railroad Co., 99 U. S. 348; Railroad Co. v. Gibbes, 142 U. S. 390, 12 Sup. Ct. 255; New York & N. E. R. Co. v. Town of Bristol, 151 U. S. 556, 14 Sup. Ct. 437. This action upon the part of the state does not impair the obligation of a contract.

This leads to the second federal question: Are the rates fixed by the corporation commission unreasonable? If so, this court can declare them invalid. Smyth v. Ames, 169 U. S. 526, 18 Sup. Ct. 418. There are many affidavits in this record bearing upon this question. No issue can be decided by affidavit with any degree of satisfaction. Before coming to any conclusion, the court needs the aid of a reference. Let an order be entered referring it to E. S. Martin, Esq., as special master (the standing master being in this behalf disqualified), instructing him to inquire into the rates prescribed for the carriage of fertilizers, and all facts bearing thereon, and specially as to their reasonableness, with leave to report any special matter.