Samuel M. Gold, J.
Plaintiffs move for an order striking out the answer of the. defendants, and for judgment on the pleadings, and upon the ground that the answer is insufficient in law, pursuant to rule 112 of the Buies of Civil Practice and section 476 of the Civil Practice Act. The action is instituted pursuant to article III-A of the Insurance Law, and seeks the recovery of the cost of the reasonable services and expenses incurred by the Insurance Department of the State of New York in auditing the books, records and affairs of the defendant welfare fund, an employee welfare fund registered with the Insurance Department of the State of New York. Defendants cross-move for judgment on the pleadings. The following facts set forth in the answer are deemed to be true.
Automobile Transporters Welfare Fund is a trust fund which consists of an equal number of union and employer trustees (U. S. Code, tit. 29, § 186). The employers who make the contributions on behalf of their employees to the .fund are engaged in interstate commerce. The fund covers 15,000 to 16,000 employees who are resident in 24 States of the United States, 3% of whom are located in the State of New York. „The sole and principal place of business of the fund is in Michigan. The *908 fund was created by a trust indenture. It was not created by the State of New York, and it is not required to receive any license or permission 'from the State of Nbw York. It is'a private trust consisting of equal representation by employers and unions and registered with the Insurance Department pursuant to article III-A of the Insurance Law.
The Welfare and Pension Plan Disclosure Act of 1958, as amended, provides "in subdivision (a) of section 10 as follows: ‘ ‘ In the case of an employee welfare or pension benefit' plan providing benefits to employees employed in two or more States, no person shall be required by reason of any law of any such State to file with any State agency (other than an agency-of the State in which such plan has its principal office) any information included within a description of the plan or an annual report published and filed pursuant to the provisions of this Act if copies of such description of the plan and of such annual report are filed with the State agency, and if copies of such portion of the description of the plan and annual report, as may be required by the State agency, are distributed to participants and beneficiaries in accordance with the requirements of such State law with respect to scope of distribution. Nothing contained in this subsection shall be construed to prevent any State from obtaining such additional information relating to any such plan as it may desire, or from otherwise regulating such plan.” (Emphasis supplied.) and in subdivision (b) of section 10 as follows: “ The provisions of this act, except subsection (a) of this section (and section 13), and any action taken thereunder, shall not be held to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of the United States or of any State affecting the operation or administration of employee welfare or pension benefit plans, or in any manner to authorize the operation or administration of any such plan contrary to any such law.” (Emphasis supplied.) (U. S. Code, tit. 29, § 309.) The intent to pre-empt jurisdiction in the field must be made manifest. Such intent is clearly expressed in the quoted provisions, for if exclusive Federal jurisdiction were not intended, there would be no need to specify a limited area in which State jurisdiction was granted. The culling out of a limited area of State jurisdiction excludes from State jurisdiction what was not granted, including the authority to impose inspection cost. The Federal statute provides that no State shall require any person to supply to it the information which by the Federal statute is required to be *909 supplied to the State agency in which the trust has its principal office. Under no construction of the Federal statute may any other State impose a liability to pay the cost of inspection with reference to the information required by the Federal statute to be supplied to the agency of the domiciliary State.
Indeed, the cost of inspection may not be imposed upon the defendant in any event. In Adlerstein v. City of New York (11 Misc 2d 754, affd. 7 A D 2d 717, affd. 6 N Y 2d 740) the city endeavored to support the imposition of a license fee of $250, conceded not to be an imposition for the purpose of revenue, as a source to compensate the licensing authority for issuing and recording the license and to pay for inspection in relation to the enforcement of the licensing provisions. It was there held that inspection has nothing to do with licensing. Here, too, it has nothing to do with registration.
The defendant was not created by State authority and is not operating by virtue of any license issued to it. Legislative regulation of the recipients of special privileges from the States may include the imposition of cost of inspection (Charlotte, Columbia & Augusta R. R. Co. v. Gibbes, 142 U. S. 386; Bronx Gas & Elec. Co. v. Maltbie, 268 N. Y. 278). If authority exists to impose such a liability upon a defendant, engaged as this defendant is in interstate commerce, without license or permission of any kind from the State of New York, it could result in the imposition of the cost of inspection of the defendant’s records by all of the 24 States in which the members of the constituent unions are resident. This would be an intolerable' burden on the- defendant, and an unwarranted.:burden on interstate commerce. The inspection in this instance, in fact, occurred in the State of Michigan, the domiciliary State of the fund. To the extent that the plaintiffs rely on Huron Portland Cement Co. v. City of Detroit (362 U. S. 440, 442, N. 1) the court there stated ‘ ‘ We do not reach the question of the validity of the inspection sections as they might be applied to appellant, but limit our consideration solely to what is presented on this record — the enforcement of the criminal provisions of the Code ”. The fact that the defendant is registered with the New York State Insurance Department is of no consequence, since under the Insurance Law the defendant is exempted from the licensing provisions of the insurance act. Such registration cannot support the claimed authority to impose inspection costs even though the Federal statute in its regulatory provisions is more modest than the regulatory provisions contained in the State statute in relation *910 5 to- what may he done with respect to the information filed in the State of Michigan (Rice v. Santa Fe Elevator Corp., 331 U. S. 218).
It is • further ■ notable' that the fund, was created as the result of collective bargaining under the National Labor Relations Act. The fund was created for the benefit of the employees and may not - be diminished by appropriation therefrom of the cost of this inspection, and nothing contained in the Welfare and Pension Plan Disclosure Act permits such diminution to be made by virtue of any provision of the New York State Insurance Law.
Plaintiff’s motion is denied. Since under the Federal statute jurisdiction has been pre-empted save as to the small area of State jurisdiction conferred, and since the particular action involved here is not within the limited area of State jurisdiction conferred, and since in any case inspection cost may not be thus imposed (Adlerstein v. City of New York, supra) the motion of the defendants for judgment on the pleadings must be granted.
(On reargument, May 31, 1962.)
Plaintiff .moves for reargument of their motion to strike out the answer of the defendants and for judgment on the pleadings, pursuant to rule 112 of the Rules of Civil Practice and section 476 of the Civil Practice Act.
The. examination in Michigan was concluded in 1958. Plaintiff argues that since 1947, when section 186 of title 29 of the United States Code became effective, and until January 1, 1959, when section 301 of title 29 of the United States Code (Welfare and Pensions Plans Disclosure Act), became effective, there was no Federal statute requiring a welfare fund that had registered with the Superintendent of Insurance to file financial reports with the Insurance Department. Section 37-f of the Insurance Law of the State of New York provides: “ all charges * * * shall be presented to the trustees # * * in the form of a copy of the itemized bill therefor as certified and approved by the superintendent * * * [u]pon receiving such certified copy such trustee shall pay the amount thereof ’ ’. It is alleged in the complaint that pursuant to such statute the Superintendent of Insurance did present an itemized bill to the defendants on March 10,1959. At that time the Disclosure Act was in effect.
Plaintiff further contends that in Adlerstein v. City of New York (11 Misc 2d 754, 755, affd. 7 A D 2d 717, affd. 6 N Y 2d 740) the court stated: “ There is further agreement that ihe fee which may be charged for the issuance of a license is such that will compensate the licensing authority for issuing and recording *911 the license and pay for inspection to see to the enforcing of the license provisions.” There are no license provisions whose enforcement is to- be looked to, for the defendants have not been licensed under the insurance act of the State of New York and the limited or restricted permissible area of charge may not be invoked in the absence of the existence or necessity for license. The motion for reargument is denied.