# McLEAN, WIDOW OF NATHANIEL H. McLEAN, *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 33.    Argued November 6, 1912.—Decided December 23, 1912.

Under the act of Congress of February 24, 1905, 33 Stat. 806, c. 777, directing the accounting officers to settle and adjust all back pay and emoluments that would have been due to an officer had he remained in the army for a period that he was out of the army after an enforced resignation from that time until his reinstatement *held* that, under such a statute:

The duties of accounting officers are administrative and not judicial, and as to whatever rights arose under the act as to its construction, the Court of Claims had jurisdiction to determine.

In order to construe the statute and make the redress as complete as Congress intended, reports of the committees of both houses having the matter in charge may be referred to.

Public moneys are not appropriated as mere gifts and such an act will not be regarded as a simple gratuity.

The words "all back pay and emoluments" include forage, rations, and pay for servants to which the officer would have been entitled under the statutes had he remained in the army, and in adjusting under the statute those items should not have been excluded because the officer was not actually in service of the United States.

An act of Congress will not be construed as giving a right and taking it away at one and the same instant; nor will the conditions making it necessary be made a reason for defeating it.

The word "all" excludes the idea of limitation.

45 Ct. Cls. 95, reversed.

THE facts, which involve the amount due to a reinstated officer of the United States Army for back pay and emoluments under an act of Congress and the proper method of computing the same, are stated in the opinion.

*Mr. Archibald King* for appellant.

*Mr. William W. Scott,* with whom *Mr. Assistant Attorney*

*General John Q. Thompson* was on the brief, for the United States:

This court has repeatedly held that it will not go behind the findings of fact as made by the Court of Claims and will not consider the evidence upon which they were founded. 5 Wall. 419; 17 Wall. XVII; 93 U. S. 605; 111 U. S. 609. See also *Sisseton & Wahpeton Indians* v. *United States*, 208 U. S. 561, 566, citing *McClure* v. *United States*, 116 U. S. 145; *District of Columbia* v. *Barnes*, 197 U. S. 146, 150; *Sac & Fox Indians* v. *United States*, 220 U. S. 481, distinguishing *United States* v. *Old Settlers*, 148 U. S. 427.

The act of February 24, 1905, constituted the accounting officers and not the courts the tribunal to settle the accounts.

In order to ascertain if there was anything due under said act the accounting officers were required to decide as a question of fact whether or not McLean "actually kept in service" any servants and, if so, how many.

Still another question of fact to be determined by the accounting officers was whether or not McLean actually kept any horses during said period at the place where he was on duty.

To decide these two questions of fact it was necessary for the accounting officers to pass upon the weight and competency of evidence,

The finding and conclusion reached by the accounting officers of the Treasury is final and conclusive, and the Court of Claims was without authority to review it. *United States* v. *California & Oregon Land Company*, 148 U. S. 31, 43; *Foley* v. *Harrison*, 15 How. 433, 446; *Steele* v. *Smelting Co.*, 106 U. S. 447, 451; *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194, 229; *Marshall's Case*, 21 Ct. Cls. 307; *Plummer's Case*, 24 Ct. Cls. 517; *Parish* v. *MacVeagh*, 214 U. S. 124.

If the act required only an administrative action on the

part of the accounting officers, the requirements of said act were complied with by them when payment was made of the pay of a major and personal subsistence.

If the act required discretionary action by the accounting officers of the Treasury, then the act made those officers a special tribunal, and their findings and payments made thereunder are conclusive and were not properly reviewable by the Court of Claims.

An officer resigning is not entitled to commutation of allowances. *United States* v. *Sweet*, 189 U. S. 471; *Jones* v. *United States*, 4 Ct. Cls. 197.

McLean was out of the service and with him it was impossible to make the certificate required to entitle him, much less his widow, to servants' pay and allowances. *Kilburn* v. *United States*, 15 Ct. Cls. 41, 46, differs from the present case, as Kilburn was unjustly or inadvertently dismissed the service, while McLean voluntarily separated himself from the service by resigning.

The findings do not show that McLean had servants and horses actually in the service.

The act of July 15, 1870, abolished all emoluments and allowances for forage and servants. 18 Stat. 320, § 24.

The law authorizing commutation of forage provided "that neither forage nor money shall be drawn by officers, but for horses actually kept by them in service." 3 Stat. 299; *United States* v. *Phisterer*, 94 U. S. 219; *United States* v. *Lippitt*, 100 U. S. 663, 670.

As to what are pay and emoluments, see *Sherburne's Case*, 16 Ct. Cls. 491, 496; *Wilson's Case*, 44 Ct. Cls. 428; *Odell's Case*, 38 Ct. Cls. 194.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The question in the case is the extent of relief to which appellant is entitled under the following act of Congress, passed February 24, 1905:

"That the proper accounting officers be, and they are hereby directed to settle and adjust to Sarah K. McLean, widow of the late Lieutenant-Colonel Nathaniel H. McLean, all back pay and emoluments that would have been due and payable to the said Nathaniel H. McLean as a major from July twenty-third, eighteen hundred and sixty-four, to the date of his reinstatement, March third, eighteen hundred and seventy-five, and that the amount found due by said adjustment is hereby appropriated, to be paid out of any money in the Treasury not otherwise appropriated." 33 Stat. 806, c. 777.

McLean entered the United States Military Academy July 1, 1844, graduated therefrom and was appointed brevet second lieutenant in the army July 1, 1848, and served until the year 1864, when, having attained the rank of major and assistant adjutant general, he resigned, his resignation being accepted July 23, 1864. By act of March 3, 1875, 18 Stat. c. 187, p. 515, Congress authorized the President to appoint Major McLean to fill the first vacancy which might occur in the lowest grade of the adjutant general's department, "or, if he shall deem it best, to reinstate and retire him with the rank to which he would have attained in service at the date of the passage of this act." Under this authority Major McLean was reinstated and placed on the retired list as lieutenant colonel and assistant adjutant general, to rank from March 3, 1875. He continued in that rank until his death, which occurred June 28, 1884. From the date of the acceptance of his resignation, July 23, 1864, to the date of his reinstatement, March 3, 1875, he received no pay. This interval is provided for by the act of February 24, 1905, supra.

Under that act appellant presented a claim to the Auditor of the War Department, who allowed her pay and personal subsistence which would have been due her husband from the date of the acceptance of his resigna-

tion, July 23, 1864, to the date of his reinstatement, March 3, 1875, but disallowed a claim made by her for forage and servants' pay. The disallowance was confirmed by the Comptroller of the Treasury. This action was then brought in the Court of Claims. The court sustained the accounting officers as to forage and servants' pay, saying: "As an officer of his grade, plaintiff's intestate was entitled to two servants and forage for two horses had he remained in the military service. But the officer resigned, and such voluntary retirement from the service operated to deprive the officer by his own act of the opportunity to draw the allowance incident to the keeping of two servants and two horses." As to those two items the petition was dismissed. The court, however, decided that the claim for a ration is analogous to longevity pay and is on a different basis. The court said: "The officer, by the act of reinstatement, became entitled to compensation for and during the whole period of service, with the consequent ration increase incident to the services supposed to have been rendered for the time set forth in the petition. It is all, strictly speaking, 'pay proper' . . . This entitled the plaintiff to $682.75 in addition to the amount allowed by the accounting officers." Judgment was ordered and entered for that sum. 45 Ct. Cls. 95.

The jurisdiction of the Court of Claims to entertain the action was attacked in that court and is attacked here, the contention being that the act for the relief of appellant "constituted the accounting officers and not the courts the tribunal to settle the accounts." The court ruled against the contention, and rightly. It is not necessary to repeat its reasoning. The duties of the accounting officers were, as the court said, administrative, not judicial, and as the rights of appellant arose under an act of Congress the court had jurisdiction to determine them. *Medbury* v. *United States*, 173 U. S. 492.

Upon the merits certain acts of Congress besides that

for the relief of appellant are pertinent to be considered.

The act of July 17, 1862, 12 Stat. 594, c. 200, provides that majors shall be entitled to draw forage in kind for two horses and that in case forage in kind cannot be furnished by the proper department, officers may commute the same according to existing regulations. The act of April 24, 1816, § 12, 3 Stat. 297, c. 69, fixes the money value of forage at eight dollars per month for each horse when the same shall be commuted. But it is provided "that neither forage, nor money shall be drawn by officers, but for horses actually kept by them in service." The act of July 15, 1870, 16 Stat. 315, 320, c. 294, provides a new pay system for officers of the army, abolishing commuted forage and all such emoluments, by including them in pay proper.

Under the acts of March 30, 1814, §§ 9 and 10, 3 Stat. 114, c. 37; April 24, 1816, *supra,* and March 3, 1865, 13 Stat. 487, c. 79, and the Army Regulations in force from July 24, 1864, to July 14, 1870, there would have been due and payable to McLean, as an emolument in the grade of major, servants' pay and allowance for as many servants, not exceeding two, as were actually kept by him at his expense, at the rate of pay, ration and clothing allowance of a private soldier in the army for each servant so kept. By other acts of Congress commissioned officers other than general officers were entitled to receive one additional ration per diem for every five years of service, which had a commuted value at various sums until July 28, 1867, when it became thirty cents.

The Court of Claims found that from the date of the acceptance of McLean's resignation until September 23, 1864, he had one servant in his employment on the trip from Portland, Oregon, the place of his resignation, to his home in Cincinnati, Ohio—time two months. From the latter date to July 14, 1870, inclusive, he had servants in

his private employ, but how many is not satisfactorily established from the evidence. The servants were not enlisted men of or connected with the army. From the dates before mentioned he owned two horses, one used occasionally for a saddle horse, but they were generally used for his private carriage.

The question, then, is whether under the facts as found and the acts of Congress above stated in regard to officers' pay and allowance and the act for the relief of appellant, she is entitled to the commuted value of forage which would have been due and payable to her husband as a major from September 24, 1864, to July 14, 1870, and servants' pay. Urging the negative of the question and in support of the decision of the Court of Claims, it is contended that for the period specified McLean was not in the service of the United States and therefore did not have and could not have had any horses or servants "actually kept in service" by him as required by the act of April 24, 1816, *supra*. To the contention appellant opposes the purpose and words of the statute. She asserts that the prompting of the act was to repair an injustice done to Major McLean, and, to support the assertion, she refers to the report of the committee of the House of Representatives and that of the Senate, Fifty-third Congress. The reference is justified (*Oceanic Steam Navigation Co.* v. *Stranahan,* 214 U. S. 320, 333; *Northern Pacific Co.* v. *Washington,* 222 U. S. 370, 380) and gives support to the contention that the circumstances which preceded and provoked Major McLean's resignation appealed to Congress, and to redress its consequences Congress authorized his reinstatement, and, to make it complete, passed the act of February 24, 1905.

It certainly may be assumed that the act was not a simple gratuity. Public moneys are not appropriated as mere gifts. They are appropriated in recognition and reward of merit or in recompense for service, or, as it may

be inferred in the present case, reparation for injustice done. Keeping this in mind, the extent of the relief granted to appellant may be determined. Indeed, the plain directness of the act of Congress leaves nothing to interpretation. The proper accounting officers are directed to settle and account to her "all back pay and emoluments that would have been due and payable" to her husband as a major of the United States Army from July 23, 1864, 'to March 3, 1875. The words are all-comprehensive. They embrace all the compensation, perquisites and dues to which he was entitled as an officer. About back pay there is no question. The accounting officers allowed the pay of the designated rank and the personal subsistence which would have been due and payable to the deceased officer. The Court of Claims extended the definition of "pay" somewhat farther and included in it "ration increase incident to the service supposed to have been rendered for the time set forth in the petition." And, necessarily, for "service·supposed" is the attribution of the act of Congress, not service rendered or possible to be rendered. But the supposition which is made efficient to give pay is sought to be halted at "emoluments," and the contention is advanced, as we have seen, that they must be considered as including only allowances or reimbursement for expenses actually incurred while in the service of the United States. The contention is not justified. The act, in order to make its relief complete, treats the officer and compensates him as though he had been in actual service from the date of his retirement to the date of his reinstatement. It is in this aspect that we must apply it. He is to be regarded for the time stated to have been in the Army of the United States, entitled to pay, entitled to emoluments, the latter as much as the former. The words of the statute make no distinction between them. Whatever is directed to be settled—pay or emoluments— is for compensation, not for actual service, but for at-

tributed service. This, we repeat, is the scheme of the statute and the test of its application. It is difficult to deal with a distinction between pay and emoluments. Both are rewards or compensation, the one no more than the other, for "service supposed." To say that one is certain and the other contingent has no meaning in the situation of Major McLean. He could not have performed the condition upon which either depended under the then existing law, and to distinguish between them notwithstanding is to enter a maze of irrelevant considerations. The enactment is, and we return to it as its own best interpreter, "that the proper accounting officers be, and they are hereby, directed to settle and adjust to Sarah K. McLean, widow of the late Lieutenant-Colonel Nathaniel H. McLean, all back pay and *emoluments* that would have been due and payable" to him "as major from July 23, 1864, to the date of his reinstatement, March 3, 1875. . . . ." It is manifest that the supposition of service by the officer is attributed to both pay and emoluments. Under that supposition what essential difference is there between them? Pay and emoluments are but expressions of value used to give complete recompense to a deserving officer. Their association was deliberate; emoluments were additive to pay, and the direction as to them is as substantive as the direction as to it, and qualified by no other condition. Of what consequence, then, how they may be defined? They may be called "indirect or contingent remuneration," as they have been called; it may be said, as it has been said, that "they are sometimes in the nature of compensation and sometimes in the nature of reimbursement." But, however they be defined, Congress has granted them, and advisedly, knowing Major McLean's situation, knowing that they included allowance for servants and forage for horses, and knowing that while the servants and horses could not have been used by him in the service of the United States, they could

have been used, as they were used, and ascribed to that service. With this knowledge and with full understanding of what it was doing, Congress directed the accounting officers "to settle and adjust all back pay and emoluments." To decide otherwise is to say that Congress gave a right and took it away at one and the same instant, or, in some confusion of mind, intended to withhold it by using the aptest word to confer it.

The Government realizes the situation and attempts to explain or escape it. Its argument is somewhat peculiar. Its contention is that Major McLean, by his resignation, "must be considered as having intentionally [and the word is especially emphasized] placed himself without the service of the United States," and so, having voluntarily separated himself from the service, he was, and his widow is, unable to furnish the certificate required by statute to secure commutation for forage and servants' pay. Of course, he was out of the Army. If he had not been out of the Army there would have been no necessity for the act of Congress, and we cannot consider the condition which made the act ne_essary a reason for defeating it. The plain motive of the act exposes the weakness of the contention. If we keep in mind the purpose which impelled the enactment in behalf of Mrs. McLean we will have no difficulty in deciding how adequate its language is to accomplish it. "All back . . . emoluments" are the words used. "All" excludes the idea of limitation, and the word "emoluments" is the most adequate that could have been used. It especially expresses the perquisites of an office, and its use in conjunction with "pay" makes the restitution of the statute complete.

*Judgment dismissing the petition as to forage and servants'*
*pay reversed and the case remanded for further proceed-*
*ings in accordance with this opinion.*