UNITED STATES ex rel. FAZIO v. TOD, Commissioner of Immigration.

(Circuit Court of Appeals, Second Circuit. November 13, 1922.)

No. 73.

1. Statutes ⟐181(1)—Aim of construction is to ascertain legislative intent.

In construing statutes the court should ascertain and give effect to the intention of the Legislature, and in doing so resort may be had not only to the language of the statute, but to other sources indicating the legislative intent.

2. Statutes ⟐217—Debates in Legislature not source for ascertaining intent.

As a rule the debates in the Legislature are not appropriate sources of information from which to discover the meaning of the statute.

3. Statutes ⟐217—Report of committee recommending bill may be consulted in construing statute.

The report of a committee of either house of Congress recommending the passage of the bill may be consulted to ascertain the intent of the law-making body in its enactment.

4. Aliens ⟐51½, New, vol. 16A Key-No. Series—Reservists from Allied army cannot re-enter after quota from their country is admitted.

Within Act May 19, 1921, limiting the number of aliens admissible in the United States to 3 per cent. of the number of that nationality resident in the United States, with the exception of certain classes therein specified, which does not include reservists in Allied armies, the provision of section 4 of that act that the provisions thereof are in addition to and not in substitution for the immigration laws, which are defined to include all laws relating to the immigration, exclusion, or expulsion of aliens, does not add to the exceptions therein specified, the provision of Joint Resolution Oct. 19, 1918, 40 Stat. 1014, excepting from exclusion for illiteracy aliens lawfully resident in the United States who returned to their native countries to serve in the armies of the nations cobelligerent with the United States, and who returned to this country within a limited time after their honorable discharge, in view of the report of the conference committee with reference to the latter act, stating that the exception of such aliens had been intentionally eliminated from the bill, so that a former reservist in the Italian army can re-enter the United States under the resolution in 1918 only if he does so before the specified quota for his country has been admitted.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceedings by the United States, on the relation of Vincenzo Fazio, next friend of Franceso Fazio, against Robert E. Tod, Commissioner of Immigration at the Port of New York. From an order dismissing the writ, relator appeals. Affirmed.

A. Bertram Samuels, of New York City (A. Bertram Samuels and John E. Leddy, both of New York City, of counsel), for appellant.

William Hayward, U. S. Atty., and James C. Thomas, Jr., Asst. U. S. Atty., both of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. The appellant is an alien being a subject of the king of Italy. It appears that from 1906 to 1911 he was an actual resident of the United States. He then returned to Italy on a visit and remained there for four months. In April, 1912, he returned again to the United States, remaining here until 1915, when he returned to Italy to serve in the Italian army, being a reservist. From October 10, 1915, to January 4, 1919, he served in the Italian and Allied army, when he was honorably discharged. After his discharge he continued to remain in Italy until he could obtain passage from the Italian government back to the United States; it being the custom of the government of Italy to pay the passage of reservists back to the country from which they came to serve in the army. That matter having been provided for, he arrived at Ellis Island, Port of New York, on February 9, 1922, from Naples, Italy.

Upon his arrival at the port of New York the appellant had a hearing on February 10, 1922, before a Board of Special Inquiry held at Ellis Island, and after testimony was taken and certain other evidence was introduced the board unanimously excluded him on the ground that his admission would be in excess of the quota allotted to the country of his birth, and also on the ground that he was unable to read. On February 11, 1922, he was granted a rehearing before the board, and other testimony was taken and evidence introduced, and the board again unanimously excluded him for the reasons given at the previous hearing.

At these hearings the alien appears to have been duly informed and apprised of the charges against him, and he was accorded a full, complete, and fair hearing, and the proceedings at the hearing were duly transmitted to the Department of Labor on February 15, 1922. The Secretary of Labor thereupon affirmed the decision of the Board of Special Inquiry and directed the deportation of the alien. Since the receipt of the order of deportation, he has been held by the immigration authorities at Ellis Island under and in obedience to the said order.

A petition for a writ of habeas corpus having been presented to the District Court for the Southern District of New York and the writ obtained, that court made inquiry into the regularity of the deportation proceedings and dismissed the writ. But the order dismissing the

writ provided that all proceedings on the part of the Commissioner of Immigration at the port of New York, for the alien's deportation should be stayed pending the determination of this appeal and pending the further order of the court. From what has been said it appears that the immigration authorities excluded the appellant upon two grounds:

"(a) Because he was in excess of the quota permitted to come to this country from Italy. Immigration Restriction Laws, Act May 19, 1921 (42 Stat. 5).

"(b) Because he was unable to read. U. S. Immigration Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u)."

The court below, in dismissing the writ, did so upon the first of the two grounds above stated. It failed to sustain the second ground relied upon. As to that the court below was of the opinion that the appellant's illiteracy did not bar his admission by reason of the terms of the joint resolution of the Congress of October 19, 1918, in favor of aliens who served in the military or naval service of the United States, or of any of its allies in the war then pending, and who sought readmission to this country within a period specified in the resolution.

As the respondent has not taken any appeal from that ruling, the question as to the right of the immigration authorities to exclude the appellant on the ground that he is unable to read is not before us on this appeal; the correctness of the ruling being conceded. The sole question raised by this appeal, therefore, is whether the court below was in error in holding that the appellant, notwithstanding he is a reservist, is not entitled to admission to the United States, inasmuch as at the time of his entry the number of aliens entitled to come to this country from Italy had already been admitted.

That the number from that country already admitted during the fiscal year involved had prior to the appellant's arrival attained to the 3 per cent. specified in the act is not disputed. Act May 19, 1921 (42 Stat. 5), being "An act to limit the immigration of aliens into the United States," provides in section 2 that the number of aliens admissible to the United States from any one nationality shall be limited to 3 per cent. of the number of residents of each particular nationality in the United States, as shown by the 1910 census. The act then goes on to declare that the above provision shall not apply to certain specified classes but makes no reference to reservists. That part of section 2 which specifies the exceptions may be found in the margin.[1] And subdivision (d) of section 2 declares that:

[1] "This provision shall not apply to the following, and they shall not be counted in reckoning any of the percentage limits provided in this act: (1) Government officials, their families, attendants, servants, and employees: (2) aliens in continuous transit through the United States; (3) aliens lawfully admitted to the United States who later go in transit from one part of the United States to another through foreign contiguous territory; (4) aliens visiting the United States as tourists or temporarily for business or pleasure: (5) aliens from countries immigration from which is regulated in accordance with treaties or agreements relating solely to immigration: (6) aliens from so-called Asiatic barred zone, as described in section 3 of the Immigration Act; (7) aliens who have resided continuously for at least one year immediately

"When the maximum number of aliens of any nationality who may be admitted in any fiscal year under this act shall have been admitted all other aliens of such nationality, except as otherwise provided in this act, who may apply for admission during the same fiscal year shall be excluded"

—subject to certain provisions which are inapplicable to the facts of this case and which need not be considered herein. Section 4 of the act, however, declares:

"That the provisions of this act are in addition to and not in substitution for the provisions of the immigration law."

And that there may be no doubt as to the meaning of the words the "immigration law" the act above referred to provides that:

"The term 'Immigration Act' means the Act of February 5, 1917, entitled 'An act to regulate the immigration of aliens to, and the residence of aliens in, the United States'; and the term 'immigration laws' includes such act and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, or expulsion of aliens."

The appellant insists that he is entitled to enter the country by virtue of the joint resolution of October 19, 1918, 40 Stat. 1014. That resolution provided in part as follows:

"That, notwithstanding the provisions of section 3 of the Immigration Act of February 5, 1917, * * * aliens * * * who are illiterate, aliens lawfully resident in the United States when heretofore or hereafter enlisted or conscripted for the military or naval service * * * of any one of the nations cobelligerent of the United States in the present war * * * who may during or within one year after the termination of the war apply for readmission to this country, after being honorably discharged or granted furlough abroad by the proper military or naval authorities, or after being rejected on final examination in connection with their enlistment or conscription, shall, within two years after the termination of the war, be readmitted. * * *"

The appellant insists that he is within the terms of the resolution referred to. The appellee insists that the resolution is under the circumstances inoperative. That the appellant rendered the required military service and was honorably discharged, and that he applied for readmission within one year after the termination of the war, is conceded.

The Act of May 21, 1921, which limits the immigration of aliens into the United States in any fiscal year to 3 per centum of the number of foreign-born persons of such nationality resident in the United States as determined by the census of 1910, appears to exclude the appellant he not belonging to any one of the eight excepted classes therein specifically mentioned. But the appellant relies upon section 4 of the Act of May 19, 1921, already cited and which declares that the provisions of the act "are in addition to and not in substitution for the provisions of the immigration laws." He insists that the Joint Resolution of October 19, 1918, is a law relating to immigration and so is not intended to be repealed and is not repealed by the Act of May

preceding the time of their admission to the United States in the Dominion of Canada, Newfoundland, the republic of Cuba, the republic of Mexico, countries of Central or South America, or adjacent islands; or (8) aliens under the age of eighteen who are children of citizens of the United States."

19, 1921. And he calls our attention to the provision contained in section 1 of the act defining the term "Immigration Act" and the term "immigration laws" above quoted.

On the other hand, the appellee admitting that Congress intended the provisions of the Act of May 19, 1921, to be in addition to and not in substitution for the provisions of the immigration laws then existing, asserts that a correct interpretation means that the joint resolution becomes operative only in the event that the quota for a particular country had not been exhausted.

[1] It thus becomes our duty to endeavor to ascertain what the intention of Congress really was, and in the construction of a statute and in ascertaining its true meaning and application resort may be had not only to the language of the statute, but also to the intention of the Legislature. The rule is fundamental that in construing statutes the court should ascertain and give effect to the intention of the Legislature. If the intention of the Legislature cannot be discovered then it is the duty of the court to give the statute a reasonable construction consistent with the general principles of law.

As said by Chief Justice Marshall in United States v. Fisher, 2 Cranch, 358, 386 (2 L. Ed. 304), "Where the intent [of an act] is plain, nothing is left to construction," and he added:

"Where the mind labors to discover the design of the Legislature, it seizes everything from which aid can be derived."

[2] As a rule the debates in the Legislature are not regarded as appropriate sources of information from which to discover the meaning of a statute. In United States v. Trans-Missouri Freight Association, 166 U. S. 290, 318, 17 Sup. Ct. 540, 41 L. Ed. 1007, the court speaking through Mr. Justice Peckham declared that there is general acquiescence in the doctrine that debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body. See, also, United States v. Union Pacific R. R. Co., 91 U. S. 72, 79, 23 L. Ed. 224; Aldridge v. Williams, 3 How. 9, 24, 11 L. Ed. 469; Mitchell v. Great Works Milling & Manufacturing Co., Fed. Cas. No. 9662, 2 Story, 648, 653; Queen v. Hertford College, 3 Q. B. D. 693, 707. The reason stated is that it is impossible to determine with certainty what construction was put upon an act by the members of a legislative body that passed it by resorting to the speeches of individual members of the body. Those who did not speak may not have agreed with those who did.

[3] But the report of a committee of either house of Congress recommending the passage of the bill may be consulted, with the view of ascertaining the intent of the law-making body in its enactment. In Holy Trinity Church v. United States, 143 U. S. 457, 464, 465, 12 Sup. Ct. 511, 36 L. Ed. 226, the court applied the principle above stated to the Act of February 26, 1885, prohibiting the entry into the United States of aliens under contract to perform labor. And that court has in a number of instances examined the reports of committees as an aid to the ascertainment of the meaning of a legislative act. The Delaware, 161 U. S. 459, 472, 16 Sup. Ct. 516, 40 L. Ed. 771; Buttfield v. Stranahan, 192 U. S. 470, 495, 24 Sup. Ct. 349, 48 L. Ed.

525; Oceanic Steam Navigation Co. v. Stranahan, 214 U. S. 320, 333, 29 Sup. Ct. 671, 53 L. Ed. 1013; Northern Pacific Co. v. Washington, 222 U. S. 370, 380, 32 Sup. Ct. 160, 56 L. Ed. 237; McLean v. United States, 226 U. S. 374, 380, 33 Sup. Ct. 122, 57 L. Ed. 260; St. Louis, Iron Mountain & Southern Railway Co. v. Craft, 237 U. S. 648, 661, 35 Sup. Ct. 704, 59 L. Ed. 1160; Woodward v. De Graffenried, 238 U. S. 284, 299, 35 Sup. Ct. 764, 59 L. Ed. 1493.

[4] The purpose of the Act of May 19, 1921, is stated in the committee report of the House of Representatives No. 4075 of April 19, 1921, which stated it to be:

"To limit immigration of aliens from May 10, 1921, until June 30, 1922, fourteen months less ten days, to 3 per cent. of the number of foreign-born persons of such nationality in the United States as determined by the United States census of 1910."

It also appears in the conference report accompanying H. R. 4075 of the House of Representatives, 67th Congress, First Session, Report No. 62. In that report the managers on the part of the House submitted a statement in explanation of the effect of the action agreed upon by the conferees. The report states the changes made in the House text as follows:

"(1) The House provision, exempting from the 3 per cent. limitation aliens residing in the United States who return from a temporary visit abroad, is eliminated. This classification is transferred to paragraph D.    *    *    *

"(2) The provision exempting aliens entitled to readmission under the provisions of the joint resolution authorizing 'the readmission to the United States of certain aliens who have been conscripted or have volunteered for service with the military forces of the United States or cobelligerent forces,' approved October 19, 1918, is eliminated under the resolution of March 3, 1921, aliens coming under the provisions of the Act of October 19, 1918, have one year from March 3, 1921, in which to make application to return to the United States, and under this bill will be subject to the percentage restriction.

"(3)    *    *    *

"(4)    *    *    *

"The elimination of the provisions mentioned above makes H. R. 4075 more rigid in its restrictive effect than when it left the House."

It thus clearly appears that the intention was that reservists returning to this country should be subject to the percentage restriction. While the Joint Resolution of October 19, 1921, is not repealed, it is operative only in the event that the quota for a particular country has not been exhausted. As the quota entitled to admission from Italy had been exhausted at the time the appellant applied for admission, no error was committed by the immigration officials in ordering his deportation.

The order dismissing the writ is affirmed, and the relator must be remanded to the custody of the Commissioner of Immigration at the port of New York.