## WASHINGTON RY. & ELECTRIC CO. v. DISTRICT OF COLUMBIA et al.

## CAPITAL TRACTION CO. v. SAME.

### Nos. 6314, 6315.

United States Court of Appeals for the District of Columbia.

Argued Jan. 15, 1935.

Decided March 18, 1935.

S. R. Bowen and G. Thomas Dunlop, both of Washington, D. C., for appellants.

E. Barrett Prettyman, Corp. Counsel, and William A. Roberts, People's Counsel, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment of the Supreme Court of the District of Columbia in a case arising from certain proceedings of the Public Utilities Commission of the District in respect to the rates of fare charged by the street railways of the District.

The record discloses that the two street railway companies of the District of Columbia, to wit, the Washington Railway & Electric Company and the Capital Traction Company, filed applications with the Public Utilities Commission of the District seeking increased rates of fare. The commission after a public hearing denied both applications. The companies then appealed from the commission's order to the Supreme Court of the District which overruled the contentions of the commission and granted the increases asked by the companies; and these were put into effect. The commission thereupon appealed from the lower court's order to this court, and printed and filed a record on appeal at a cost of $2,075.10 and also a brief at a cost of $224.95, but thereafter, and before the cases came on for hearing, voluntarily dismissed its appeal, and the increased rates remained in operation. It appears that the commission dismissed the appeal "as a result of changed conditions and a material decline in the revenues of the utilities on October 6, 1931."

The commission acting under paragraph 42a of the Public Utilities Act (44 Stat. pt. 2, c. 304, p. 1351; D. C. Code 1929, tit. 26, § 65), then issued its "miscellaneous

trust fund deposit amended order No. 11," requiring a deposit by each of the companies of the amount of $1,150.03, being one-half of the amount required to pay the printing bills aforesaid. The companies refused to pay this demand or any part of it. The printing costs were billed by the printers against the District of Columbia, and, inasmuch as there were not sufficient funds in the miscellaneous trust fund deposit set up under paragraph 42a, supra, to pay the same, the Commissioners of the District paid each of the printing bills from other funds on the account and order of the Public Utilities Commission, and thereupon the present actions at law were brought by the commission against the respective companies to recover from each the one-half of the amount paid for the bills. The two cases, involving as they did the same question, were by agreement of the parties consolidated, and were tried before the Supreme Court without a jury, resulting in a judgment against each defendant in the amount claimed. From these judgments the companies have brought the present appeal.

The sole question presented by the record is whether the Public Utilities Commission was entitled to collect from the street railway companies the cost of the printing bills incurred in its appeal of the rate decision from the Supreme Court of the District to this court. All of the prior expenses of the proceeding had been paid by the companies upon similar orders, likewise issued by the commission under paragraph 42a, and only the two printing bills above were contested by the companies.

The law creating the Public Utilities Commission of the District of Columbia was enacted in the year 1913 as section 8 of the District of Columbia Appropriations Act of that year (37 Stat. 974; D. C. Code 1929, tit. 26, § 1 et seq.). The act provided, among other things, for the investigation by the commission of the rates charged by the public utilities of the District, either upon application by the utility or by any persons thereby aggrieved. It was provided (paragraph 64 [D. C. Code 1929, T. 26, § 89]) that any public utility being dissatisfied with an order or decision of the commission fixing any rate might commence a proceeding in equity in the Supreme Court of the District of Columbia against the commission as defendant to vacate and set aside such decision, and that any party, including the commission, might appeal from the or-

der or decree of that court to the Court of Appeals of the District of Columbia and therefrom to the Supreme Court of the United States. It was expressly provided in this paragraph that the commission shall not, nor shall any of its members, officers, agents, or employees, be taxed with any costs, nor shall they be required in any case to make any deposit for costs or pay for any service to the clerks of any courts or to the marshal of the United States.

The act, as enacted in 1913, contained no provision for the payment of the expenses of any investigation made by the commission except that contained in paragraph 42 thereof (D. C. Code 1929, T. 26, § 64), which reads as follows:

"Par. 42. If upon investigation it shall be found that any rate, toll, charge, schedule, or joint rate, or rates, is unjust, unreasonable, insufficient, or unjustly discriminatory or preferential, or otherwise in violation of any of the provisions of this chapter, or that any time schedule, regulation, act, or service complained of is unjust, unreasonable, insufficient, preferential, or otherwise in violation of any of the provisions of this chapter, or if it be found that reasonable service is not supplied, the public utility found to be at fault shall pay the expenses incurred by the commission upon such investigation."

According to the provisions of the foregoing paragraph, the expenses of such investigation would be imposed as a penalty upon any public utility found to be in fault by the investigation. There was no provision in the act for the recovery of such payments by the public utility by an increase of rates to cover the amount thus paid; the loss in such case simply fell as a penalty upon the offending utility. The expenses incurred in investigations wherein the public utility was not found to be in fault were borne by the commission to be paid out of its appropriations.

In the year 1927 an amendment to the foregoing act was passed by Congress as paragraph 42a, 44 Stat. 1351, c. 304; D. C. Code 1929, tit. 26, § 65. This paragraph reads as follows:

"Par. 42a. The expenses of any investigation, valuation, revaluation, or proceeding of any nature made by the Public Utilities Commission of any public utility operating in the District of Columbia shall be borne by the public utility investigated, valued, revalued, or otherwise as a special franchise tax in addition to all other taxes

imposed by law, and such expenses with 6 per centum interest may be charged to operating expenses and amortized over such period as the Public Utilities Commission shall deem proper and be allowed for in the rates to be charged by such utility. When any such investigation, valuation, revaluation, or other proceeding is begun the said Public Utilities Commission may call upon the utility in question for the deposit of such reasonable sum or sums as, in the opinion of said commission, it may deem necessary from time to time until the said proceeding is completed, the money so paid to be deposited in the Treasury of the United States to the credit of the appropriation account known as 'Miscellaneous trust fund deposit, District of Columbia' and to be disbursed in the manner provided for by law for other expenditures of the government of the District of Columbia, for such purposes as may be approved by the Public Utilities Commission. Any unexpended balance of such sum or sums so deposited shall be returned to the utility depositing the same: Provided, That the amount expended by the commission in any valuation or rate case shall not exceed one-half of 1 per centum of the existing valuation of the company investigated, and that the amount expended in all other investigations shall not exceed one-tenth of 1 per centum of the existing valuation for any one company for any one year."

The obvious purpose of this enactment. was to change the method theretofore pursued relating to the payment of the expenses of investigations and subsequent proceedings in such cases. Instead of imposing the costs upon the public utility only when found to be at fault, and upon the Public Utilities Commission in all other classes of cases, as was provided by paragraph 42 of the original act, this paragraph provided that the expenses of such investigations and proceedings should be borne by the utility investigated as a special franchise tax and that such payments with 6 per cent. interest added thereto should be charged to operating expenses and be allowed for in the rates permitted to be charged by the utilities. In other words, under the amendatory act the burden of such expenses should be imposed upon that part of the public only which enjoyed the service of the public utility, instead of providing for them by general taxation. This amendment did not relate alone to paragraph 42, supra, but modified the entire scheme for the payment of such expenses. The character of the amendment is well set out in the reports of the committees of the Sixty-Ninth Congress by which the bill was enacted. In reporting upon the bill, the following statement was made by the House committee: "The method here provided for raising funds by assessing the companies or utilities, who are permitted to charge the assessment as part of their operating expenses, is similar to that provided by law in a number of States of the Union. * * *" In the Senate report the committee described the amendment as follows:

"The object of the bill is to provide funds to meet the expense of valuation or revaluation, as well as other proceedings by the Public Utilities Commission, involving public utility companies operating in the District of Columbia. It provides that such expense shall be borne by the public utility investigated or valued as a special franchise tax, which it may charge back to operating expenses, together with interest at 6 percent to be allowed for in the rates charged by such utility to the public. * * *

"Under the terms of the bill, when an investigation, rate case, or valuation proceeding is instituted, the Public Utilities Commission may call upon the company affected for the deposit of a reasonable sum of money necessary to cover the initial expense, with additional calls as the work progresses. Any unexpended balance shall be returned to the utility company. * * *

"By the method of raising funds provided in the bill the expense will eventually be borne by the gas consumer, the street-car rider, or the electric-current user, instead of by the public at large, many of whom would have no direct interest in or be affected by a change in rates. Many States require the cost of operation of their public utilities commissions to be borne by the companies under their jurisdiction. This is effected either by imposing a franchise tax or license fee of a percentage of the income of the companies; by penalty in case of decision against the companies in proceedings instituted relating to their charges; or by the method proposed in the bill hereby reported—a direct assessment of cost against the company, to be charged to their operating expenses and eventually paid by their customers. * * *"

In "Memorandum as to practice in other States" filed with the report of the Sen-

ate committee and made a part thereof, the following appears:

"The second method is more or less of a penalty and states that if upon investigation it is found that any rate is unjust, etc., the public utility found at fault shall pay the expenses incurred in such investigation. The District of Columbia has this provision, paragraph 42. Indiana and Rhode Island have almost identical provisions in their statutes.

"The final method, and the one based on the same principle as the joint resolution suggested herewith, is the method where the commission is required to bill directly against the utility companies affected, the cost of inventory, appraisals, and orders found necessary in connection with either finance or rate cases."

It is hardly necessary to say that the reports of a legislative committee explaining a bill referred to it may be used in determining the intention of Congress in the event of doubt or difficulty in its construction as enacted. McLean v. United States, 226 U. S. 374, 33 S. Ct. 122, 57 L. Ed. 260; Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196.

It is, of course, apparent that the amending paragraph (42a) has the effect of repealing in part or altogether the provisions of paragraph 42 as found in the original act. This, of course, was the purpose of the enactment, and, in so far as the two paragraphs are irreconcilable, the later enactment is controlling. In District of Columbia v. Hutton, 143 U. S. 18, 12 S. Ct. 369, 372, 36 L. Ed. 60, the court stated:

"We are not unmindful of the rule that repeals by implication are not favored. But there is another rule of construction equally sound and well settled which we think applies to this case. Stated in the language of this court in United States v. Tynen [20 L. Ed. 153], 11 Wall. 88, 92, it is this: 'When there are two acts on the same subject, the rule is to give effect to both if possible. But, if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.'"

The application of the rule of assessment provided by paragraph 42 (a), supra, does not impose an unconstitutional burden upon the utilities companies. In Charlotte, C. & A. R. R. Co. v. Gibbes, 142 U. S. 386, 394, 12 S. Ct. 255, 35 L. Ed. 1051, the statute in question (Gen. St. S. C. 1882, c. 40) required that the salaries and expenses of the State Railroad Commission should be borne by the several corporations owning or operating railroads within the state. It was held by the Supreme Court that these provisions were not in conflict with the Fourteenth Amendment to the Constitution that a state shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." And that requiring the burden of a public service by a corporation, in consequence of its existence and of the exercise of privileges obtained at its request, to be borne by it, is neither denying to it the equal protection of the laws nor making any unjust discrimination against it. See, also, Wisconsin Telephone Company v. Public Service Commission of Wisconsin, 206 Wis. 589, 240 N. W. 411.

We are of the opinion also that the appeal taken by the commission from the order of the Supreme Court of the District in the rate case was an administrative "proceeding" within the contemplation of paragraph 42a (D. C. Code 1929, T. 26, § 65). Such an appeal is called a "proceeding" by paragraph 64 of the act (D. C. Code 1929, T. 26, § 89) which permits of the appeal, and the term is also used in the same connection in paragraphs 65 and 68 of the act (D. C. Code 1929, T. 26, §§ 90, 93).

In Hyattsville Building Association v. Bouic, 44 App. D. C. 408, 413, it is said: "Generally speaking, the term 'proceeding' means a prescribed course of action for enforcing a legal right, and hence it necessarily embraces the requisite steps by which judicial action is invoked. It is a very comprehensive term."

It appears, accordingly, that the costs of printing the record and the brief of the commission upon the appeal to this court were expenses of the proceeding within the purview of paragraph 42a. It cannot be denied that the charge for printing the record and brief was reasonable and that the work was necessary for the prosecution of the commission's appeal.

We repeat that the commission dismissed the appeal wherein these expenses

were incurred "as a result of changed conditions and a material decline in the revenues of the utilities on October 6, 1931," and the increased rates from which the appeal was taken thereupon remained in effect.

The decision of the lower court in each case is affirmed, with costs.